NEW YORK SECURITY & TRUST CO. et al. v. LOMBARD INV. CO. OF KANSAS et al.

(Circuit Court, W. D. Missouri, W. D. March 10, 1896.)

No. 1,923.

1. CORPORATIONS—INSOLVENT INVESTMENT COMPANY—RECEIVERS—GUARANTIES.
   Receivers were appointed for an insolvent investment company, incorporated under the laws of Missouri, whose liabilities consisted mainly of guaranties, in various forms, indorsed on bonds, secured by real estate mortgages, executed by borrowers to the company, and subsequently sold and transferred by it to investors with the guaranties mentioned. *Held*, that the rights of such investors were governed by the state statute relating to assignments for benefit of creditors, which provides that the assignment shall be "for all the creditors of the assignor in proportion of their respective claims" (Rev. St. Mo. 1889, § 424); that, in the distribution of the property of such company, all claims should be allowed which, at the time of the appointment of the receivers, (1) furnished a present cause of action against the guarantor, or (2) constituted direct obligations on its part, whether due or to become due, or (3) which, though not then matured, or not constituting direct obligations, thereafter matured or would mature, or become direct obligations, before any order of distribution was made; and that all claims should be rejected (1) which arose on guaranties of collection, as distinguished from guaranties of payment, where no proceedings had been taken by the holder to collect from the maker or from the mortgaged premises, or (2) which were not matured, and in respect to which there had been no default of interest, or (3) in which, by agreement between the holder and maker, without the assent of the guarantor, the time of payment of the principal obligation had been extended.

2. GUARANTY—DEBT MATURING ON DEFAULT IN INTEREST.
   A claim against a guarantor of payment matures, so as to become a direct obligation, not only on the date the guarantied debt becomes due, but on default in payment of interest or other preliminary obligation, when, by the terms of the contract, such default is made to precipitate maturity of the debt.

3. INTEREST—APPOINTMENT OF RECEIVERS.
   Interest on claims against an insolvent corporation in the hands of a receiver is to be calculated only to the date of the appointment of the receiver.

4. INSOLVENT CORPORATION—RECEIVERS—CLAIMS SECURED BY COLLATERAL.
   The fact that a creditor's claim is secured by mortgage or otherwise does not affect his right to prove for the full amount of the claim, nor does the fact that he has realized part thereof out of the collateral, since the date of the receivership; but in the latter case he is entitled to dividends only until the balance of his debt is satisfied.

5. GUARANTY—INSOLVENT INVESTMENT COMPANY—RECEIVERS.

Receivers were appointed for an insolvent investment company, which had sold and transferred obligations secured by mortgage, with guaranties of payment thereof, but with a provision that, in case of default, it should have two years within which to collect and pay over the amount of the debt. *Held*, that claims arising on these guaranties were provable against the receivers where default had occurred and the two years had expired, whether these two events had occurred both before the appointment of the receivers, or one before and one after such appointment, or both after the appointment; and, further, that such claims were provable after default, although the two years should not expire before the order of distribution.

6. SAME.

A guaranty of collection of an obligation secured by mortgage which is transferred by the guarantor is an undertaking to pay the debt on condition that the person to whom the guaranty is given shall diligently proceed against the principal ,debtor and the mortgage security, and, in default of such diligence, the guarantor is released.

7. SAME—GUARANTIES OF PAYMENT AND COLLECTION—INTERPRETATION.

An investment company selling and transferring an obligation secured by mortgage agreed, by indorsement thereon—"First, to guaranty the payment of the coupons attached hereto at the maturity thereof; second, to collect at its own expense, and to pay over, the principal hereof at maturity, provided the same is paid by the maker; third, in event of default being made by the maker, to collect at its own expense, and to pay over, the principal hereof, within two years from maturity of the same," with interest at 6 per cent. per annum. *Held*, that this was a guaranty, not of collection merely, but of payment.

This was a bill by the New York Security & Trust Company, Maria H. Hotchkiss, and George Burnham, suing in behalf of creditors and stockholders, against the Lombard Investment Company of Kansas, the Lombard Investment Company of Missouri, the Valley Loan & Trust Company, the Alliance Trust Company, and the City Real Estate Company. The Concordia Loan & Trust Company has also been made a party defendant. The bill alleged, among other things, that the defendant companies were insolvent, and prayed for the appointment of receivers, the winding up of their affairs, and the distribution of their assets.

The Lombard Investment Company of Kansas was organized about the 1st of January, 1882, under the laws of the state of Kansas, with a capital stock which was increased at various times until it amounted to $1,875,000, all fully paid up. The company was engaged in the business of loaning money on real estate and all other kinds of securities; buying, selling, improving, and leasing real estate and all other kinds of property; issuing its own obligations of different kinds; buying and selling bonds, mortgages, and securities; and, generally, conducting any business incidental to or connected with the above-mentioned purposes, including a general trust and investment business. One of its main lines of business was dealing in farm property and city real estate in the South and West, loaning money on similar property, negotiating bonds and mortgages given for such loans, with its own guaranty in some form annexed thereto, and in buying and selling various kinds of securities, including the sale of debenture bonds made by the company itself. In the course of this business, it became the owner and holder of large quantities

of real estate in Western and Southern states and in the territories. The debenture bonds executed by the company itself were secured by a deposit of bonds, securities, and other property, as collateral, with trustees, under various trust agreements.    This Kansas company continued in active business, in its own name and on its own behalf, meeting its obligations and fulfilling its guaranties, until about August 1, 1890, when it sold and conveyed its entire property and interests of all kinds to the defendant the Lombard Investment Company of Missouri.    The latter company was organized under the laws of Missouri, with its chief place of business at Kansas City, and has a paid up capital stock of $4,000,000.    It acquired and now owns and holds all the stock of the said Kansas company, and assumed all of its obligations of whatever kind, with the same force and effect as if it had originally, on its own behalf, entered into the said obligations.    The Missouri corporation was formed for substantially the same purposes as the Kansas company, and continued the business of the latter.    Under trust agreements of the same general character as those made by the Kansas company, the Missouri corporation issued its own debenture bonds in large sums, and deposited securities and properties with the trustees.    It also loaned money upon notes secured by real-estate mortgages, and sold such notes with guaranties requiring it, under certain conditions, to pay principal and interest in case of default by the borrower.    Its business of various kinds became of vast extent, and at the time of the filing of the bill herein, there were outstanding, in loans guarantied, either by the Missouri company or the Kansas company, about $34,000,000. The defendants the Valley Loan & Trust Company, the Alliance Trust Company, and the City Real Estate Company, were organized for the purpose of aiding in the business of the Lombard Investment Company of Missouri, which subscribed and paid up their stock in full. The defendant the Investor's Company was another auxiliary company; though not originally organized by the Missouri corporation. All of the defendant companies, except the Investor's Company, were insolvent at the time the bill was filed.    In accordance with the prayer of the bill receivers were appointed as receivers for each and all of the defendant companies, and, under ancillary bills, were also appointed in the various judicial districts of the Eighth circuit.    On May 18, 1895, a final decree was entered referring the cause to Edward H. Stiles, standing master in chancery, who, among other things, was directed, by the eighth paragraph of the decree, to examine the claims of all creditors and stockholders, and, as soon as practicable, "make such a report as shall fully show the respective rights of the different claimants."

The master accordingly made the following report, dated January 23, 1896:

Report of Edward H. Stiles, Master in Chancery, upon the Classifications of Claims.

The undersigned master in chancery, in the performance of the duties imposed upon him by the final decree herein, respectfully begs

leave to submit to the court the following report upon the classification of the numerous claims, of various character, which have been presented to him for allowance:

The claims against the Lombard Company arise on direct obligations of the Lombard Investment Company in the shape of debenture bonds, and upon the guaranty of said company indorsed on bonds secured by real-estate mortgages, executed by borrowers to said company, and by the company subsequently sold and transferred to investors with the guaranty referred to. A portion of the bonds thus indorsed by the Lombard Company were executed by some one of the auxiliary companies named among the insolvent defendants, and then indorsed with guaranty, and sold by the Lombard Company. This was brought about by the title to certain properties sold under foreclosure proceedings of the Lombard Company being taken in the name of such auxiliary company, after which the auxiliary company would execute its bond, and mortgage securing it, to the Lombard Company, who would sell the same on the market to some investor. In these cases the holder of such obligation would have a claim against the assets of both companies, or, in case the claim for any reason was not a provable one against the Lombard Company, it would nevertheless constitute a good claim against the assets of the auxiliary company executing the bond, and provable as such. Of the entire obligations, aggregating some $40,000,000, there have been, up to the present time, presented to the master for allowance, claims aggregating about $20,000,000.

In accordance with the suggestions contained in the eighth paragraph of the master's report accompanying the first draft of the final decree, he has permitted everybody claiming to be a creditor, in the first instance, to present his claim and proofs, reserving the right to and with the purpose of subsequently classifying the claims and passing upon their validity and the respective rights of the different claimants. For this purpose, and as preliminary to the order of distribution and the final report of the master, showing the individual claims allowed, and the respective amounts allowed to each person, he has, as contemplated by the eighth paragraph of the final decree, prepared and now presents the following report showing the different kinds of claims, the classification thereof, and what in his opinion are, and what are not, claims entitled to distribution. In this way it can be definitely determined in advance, as is necessary to be done, as to how distribution shall be made, and upon what character of claims, according to the classification made. If the determination of the master upon any particular class is not satisfactory to any of the claimants embraced therein, they, or any one of them, may file with him exceptions to this report in respect thereto within 30 days from the date hereof, and afterwards renew the same in court according to the practice in that behalf. Should exceptions thus filed be sustained, the classification herein made will be amended accordingly, and, if overruled, that recommended herein would stand. So that, in either case, through this mode, a comparatively early determination of the validity of each class of claims can be had, without waiting until after all the claims are in,

after which the respective claims allowed, and the amount thereof, and the persons entitled thereto, will be designated and reported, and distribution ordered accordingly.

As before suggested, the great bulk of the claims arise upon the guaranties hereinbefore mentioned.   And these guaranties are so various in form as to give rise to variant questions respecting the liability of the Lombard Investment Company thereon, and as to whether certain claims arising thereunder are or are not entitled to allowance and distribution.   Some of them are guaranties of collection, some of payment, some at maturity, and some within two years thereafter, some under extension agreements, some merely guarantying title,—that the mortgage securing the bond sold and assigned is a first lien; that the company will cause the property to be kept insured, and look after and see that the taxes are paid,—some in one form, some in another.   These guaranties are 10 in number and in the following form:

Guaranty No. 1, Beginning Nov. 24. 1882, Loan 01.

For value received, the Lombard Investment Company hereby guaranties —First, the collection of the principal of the within note; second, the prompt payment of the coupons attached thereto. In witness whereof, the Lombard Investment Company has signed and delivered these presents by its —————— president this —————— day of ——————, 188–.

—————————, President.

Guaranty No. 2.

For value received, the Lombard Investment Company hereby assigns this bond to ——————, or order, and guaranties—First, the prompt payment of the coupons attached hereto; second, the collection of the principal of the within bond. In witness whereof, the Lombard Investment Company has signed and delivered these presents by its —————— president this —————— day of ——————, 188–.

—————————, President.

Guaranty No. 3, from about Sept. 1, 1886, to March 7, 1889, Ending with Loans 032,336 and 025,866.

For value received, the Lombard Investment Company hereby assigns this bond or note to ——————, or order, and agrees—First, to guaranty the payment of the coupons attached hereto at the maturity thereof; second, to collect at its own expense and to pay over the principal hereof at maturity, provided the same is paid by the maker; third, in event of default being made by the maker, to collect at its own expense, and to pay over the principal hereof, within two years from the maturity of the same, and to pay interest at the rate of six per cent. per annum, payable semiannually, until the principal is paid. In witness whereof, the said Lombard Investment Company has caused its corporate seal to be hereunto affixed, duly attested. Dated this —————— day of ——————, in the year of our Lord one thousand eight hundred and eighty——————.

Lombard Investment Company, by ——————.

Guaranty No. 4, from March 8th, 1889. This Guaranty Used on Utah and Tennessee Loans up to Jan. 7th. 1892.

For value received, the Lombard Investment Company hereby assigns this bond or note to ——————, or order, and guaranties the payment of the coupons attached hereto at maturity. It also guaranties the payment of the principal hereof within two years after the same becomes due, and to pay interest thereon semiannually, after maturity, at the rate of six per cent. per annum until paid. The Lombard Investment Company reserves the right, when necessary, to redeem this note at any time before maturity, at par and accrued interest. In testimony whereof, the said Lombard Investment Com-

pany has caused its corporate seal to be hereunto affixed, duly attested under the hand of its —— president, this —— day of ——, in the year of our Lord one thousand eight hundred and ——.

Lombard Investment Company, by ——, President.

Guaranty No. 5, Used with No. 4, for States Other than Utah and Tennessee, to Jan. 6, 1892.

For value received, the Lombard Investment Company hereby assigns a certain bond, made by ——, for $——, dated the —— day of ——, 18—, and due —— day of——, 18—, and numbered ——, to ——, or order and guaranties the payment of the coupons attached hereto at maturity. It also guaranties the payment of the principal hereof within two years after the same becomes due, and to pay interest thereon semiannually after maturity at the rate of six per cent. per annum until paid. The Lombard Investment Company reserves the right, when necessary, to redeem this note, at any time before maturity, at par and accrued interest. In testimony whereof, the said Lombard Investment Company has caused its corporate seal to be hereunto affixed, duly attested under the hand of its —— president this —— day of ——, in the year of our Lord one thousand eight hundred and ——.

Lombard Investment Company, by ——.

Title Guaranty No. 6, Used on Unguarantied Loans, Beginning Nov. 1, 1891, Loan No. 11,520.

For value received, the Lombard Investment Company assigns to ——, or order, without recourse, a certain bond or note, made by ——, for $——, No. ——, and guaranties to the holder hereof: First. (a) That the title to the real estate described in the mortgage or deed of trust securing the loan is perfect. (b) That the mortgage or deed of trust securing the same is a first lien on the property described therein. (c) That the said property has been personally examined by a salaried examiner in the employ of this company, and that the amount of this loan is not over 40 per cent. of said examiner's valuation of the property. Second. (a) That this company will, until this loan is paid, cause said property to be kept insured for the amount stipulated in the mortgage or deed of trust, as additional security for the holder hereof. (b) That it will look after the taxes levied upon the property therein, and, if necessary, will purchase said property at tax sale for the benefit of the holder hereof. Third. That it will promptly attend to the collection of interest and principal of this loan for the owner hereof free of charge. In testimony whereof, the Lombard Investment Company has caused its corporate seal to be hereunto affixed, duly attested under the hands of its —— president this —— day of ——, in the year of our Lord one thousand eight hundred and ——.

Lombard Investment Company, by ——, President.

Guaranty No. 7, Beginning Jan. 7, 1892, Loans 045,589 and 051,999.

For value received, the Lombard Investment Company hereby assigns a certain bond, made by ——, for $——, —— day of ——, 18—, and due on the —— day of ——, 18—, and numbered ——, to —— or order, and guaranties the payment of the coupons attached hereto at maturity. It also guaranties the payment of the principal hereof two years after the same becomes due, and to pay interest thereon semiannually after maturity at the rate of six per cent. per annum until paid. The Lombard Investment Company reserves the right, when necessary, to redeem this note, at any time before maturity, at par and accrued interest. In testimony whereof, the Lombard Investment Company has caused its corporate seal to be hereunto affixed, duly attested under the hand of its —— president, this —— day of ——, in the year of our Lord, one thousand eight hundred and ninety——.

Lombard Investment Company, by ——, President.

Guaranty No. 8, Feb. 1, 1892, Extension of Loans.

The Lombard Investment Company hereby consents to the extension of loan No. —— for $——, made by ——, negotiated by the Lombard Investment Company, for a period of —— years, and in consideration of such extension hereby agrees that its guaranty, executed on the back of said bond,

shall remain in full force and effect until said loan is paid. The Lombard Investment Company reserves the right, when necessary, to redeem this note, at any time before maturity, at par and accrued interest. In witness whereof, the said Lombard Investment Company has caused its corporate seal to be hereunto affixed, and duly attested under the hand of its ―― president, this ―― day of ――, in the year of our Lord one thousand eight hundred and ――.

Lombard Investment Company, by ――, President.

Guaranty No. 9, Used on Loans Extended, Commencing July 19th, 1892.

The Lombard Investment Company hereby consents to the extension of loan No. ―― for $――, made by ――, negotiated by the Lombard Investment Company for a period of ―― years, and in consideration of such extension hereby guaranties the payment of the principal of said loan two years after same becomes due, and agrees to pay the interest thereon semiannually at the rate of six per cent. per annum from ―― until paid. The Lombard Investment Company reserves the right, when necessary, to redeem this note, at any time before maturity, at par and accrued interest. In witness whereof, the said Lombard Investment Company has caused its corporate seal to be hereunto affixed, and duly attested under the hands of its ―― president this ―― day of ――, in the year of our Lord one thousand eight hundred and ninety――.

Lombard Investment Company, by ――, President.

Guaranty No. 10, for All Paper Sent E. L. I. Co. under New Agreement.

Bond No. ――, dated ―― day of ――, 18―, made by ――, for $――, with interest at ―― per cent. per annum, due ――. For value received, the Lombard Investment Company, a corporation of the state of Missouri, hereby guaranties to the holder of the within-described bond, and his assigns, the payment of the principal and interest of said bond according to its tenor. In witness whereof, the Lombard Investment Company has caused these presents to be signed by its president or vice president, and its corporate seal to be hereunto affixed, this ―― day of ――, 18―:

――――, President.

The questions arising under these different forms of guaranty, and the several questions arising out of the situation respecting the validity and provability of claims, I think, after pretty mature consideration, should be disposed of as shown by the following classification and principles:

## I. Claims Which should be Allowed.

Class No. 1 embraces claims which, at the time of the appointment of the receivers, furnished a present cause of action against the guarantor.

Class No. 2 embraces all direct obligations of the company at the date of said appointment, whether due or to become due at some time in the future.

Class No. 3 embraces all claims, though not matured, or which did not, at the time of the appointment of the receivers, constitute a direct obligation, but which have since matured, or will have matured, or constitute such obligation, before any order of distribution is made.

Class No. 4 embraces claims against any of the auxiliary companies, based on bonds executed by such companies, as stated on the first page of this report. These claims are good as against both the assets of the Lombard Company and the auxiliary company executing the bond. If for any reason invalid against the Lom-

bard Company, they are still valid against such auxiliary company.
· Class No. 5 embraces certificates issued by the Subcompany Land
Trust. These stand as audited claims by virtue of the eighth para-
graph of the final decree.

## II. Claims Which should be Rejected.

All other claims should be rejected. Among those rejected
should be included: (1) Those arising on guaranties of collection,
as distinguished from guaranties of payment, where no foreclosure
proceedings or action against the maker has been commenced, and
where the holder has not shown proper diligence in efforts to collect
his claim from the maker of the note or bond, or out of' the mort-
gaged premises, securing the same. (2) Those not matured, and
in respect to which there has been no default, in payment of inter-
est or of any kind. (3) Where extensions of the principal obliga-
tion have been made by agreement between the holder and the
maker, without the assent ·of the Lombard Company or the re-
ceivers.

## III. Other Rules Governing.

(1) Claims should be held to have matured, not only on their due
date, but on default in payment. of interest or other preliminary ob-
ligation, when, by the terms of the contract, such default is made
to precipitate the maturity of the debt. (2) The date to which the
interest on claims be calculated should be that of appointment of
the receiver, September 18, 1893. (3) Collateral security, by mort-
gage or otherwise, held by the claimant, does not affect the claim-
ant's right to prove up for the full amount of his claim, nor does
the fact that he has realized a part of his claim from the subjection
of such collateral since the date of the receivership; but he is en-
titled, in such case, to receive distribution or dividends from the
general estate until such dividends, added to the amount realized
from his collaterals, are equal to, or sufficient to satisfy, his debt.

The reasons upon which these classifications and conclusions are
based, briefly stated as practicable under the circumstances, are
as follows:

## I. In Respect to Claims That should be Allowed.

Class No. 1. Those claims which, at the date of the receivership,
furnished a present cause of action against the guarantor. This
proposition is self-evident, and needs no argument to enforce it.

Class No. 2. Those constituting direct obligations of the company
at the date of the receivership, whether then due or to become
due in the future. This proposition is also too plain to require ar-
gument.

Class No. 3. Those not fully matured, or which, at the time of the
appointment of the receivers, did not then constitute a present right
of action, or a direct obligation, but which have since matured, or
will have so matured, or constitute such obligation, before any or-
der of distribution. In respect to this proposition, there is more

difficulty of determination.   Much may be said on either side. Against it, it has been urged, on the one hand, by counsel invited to present their views, that considerations of convenience, and legal principles to be derived from certain adjudications called to my attention, are alike opposed to it; that no claim should be allowed, or receive distributions, which did not, at the date of the receivership, constitute either a present right of action, or a direct and certain obligation, and that all claims since matured, or becoming such obligations, should be unconditionally rejected.   On the other hand, it has been urged with equal vigor that all claims, whether matured or unmatured, and whether constituting a direct obligation or a mere contingent liability of the future, should be admitted to proof and allowed, the court reserving, in the case of an obligation purely contingent, sufficient of the proceeds of the sale to apply on such obligation in case it should in the end become certain; or else that a valuation should be made of the contingent liability, and the same allowed as a claim.   Between these two extremes, in my judgment, the middle course should be pursued in the present case. pointed out in classification No. 3 of claims that should be allowed, and classification No. 2 of claims that should be rejected, as hereinbefore specified.

Upon the exact point involved, whether a claim maturing or an obligation arising after the date of the receivership, and before any order of distribution, should be allowed, there is (independent of those arising under the bankrupt acts and which are claimed not to apply) a sparseness of decisions hardly to be expected.   But very few cases are to be found directly in point.   As opposed to the allowance of such claims the case of Chemical Nat. Bank v. Armstrong, 8 C. C. A. 155, 59 Fed. 372, has been vigorously pressed upon my attention. But a careful examination of that case will show that the only question involved, and the only one decided, was that a person holding collateral security, or who has made collections therefrom, was, notwithstanding, and regardless of that, entitled to prove up for the full amount of his claim, and to receive dividends thereon until the dividends so received, when added to the amount realized from the collaterals, were sufficient to satisfy the claim, and the incidental one that interest on the claim should be calculated and allowed to the date of the receivership only.   That decision in respect to both of those principles has been followed by me in the present case, as shown by rules 2 and 3 of the rules governing proof of claims hereinbefore set out.

But while these were the only points involved or decided, it is nevertheless energetically claimed that the logic of that decision is to the effect that the provability and right of allowance of a claim arising on a guaranty must be determined by its exact status at the date of the receivership.   In other words, if mature or actionable, or constituting a direct obligation the day before the receivers were appointed, it is provable; if it become so the next day or the next week afterwards, it is not.   The theory on which this claimed deduction is based is that, on the very moment of declared insolvency, the assets, in the eye of the law, all belong to the creditors

pro rata, and that only those are to be deemed owners whose claims are at that time matured or actionable. Conceding the correctness of the theory that the creditors became the pro rata owners of the assets upon the declaration of insolvency, I am nevertheless of the opinion, after a careful consideration of that case in respect to the questions involved and decided, that it does not justify the deduction above claimed in respect to the present question, nor, as I have already said, was this question either decided or involved. Considerable has been said by counsel about the inconvenience of any other rule, and in that connection reference has been made to the remarks of the court on that subject in the case referred to. But it will at once be seen that the remarks referred to have no bearing whatever on the question at issue here. What the court did say in that respect, and in reference to what considerations, is shown by the following quotation from the opinion:

"The next question is, shall creditors of an insolvent national bank, in proving their claims, be allowed any credit for collections from collateral made subsequent to the declared insolvency and before proof of claim? If so, shall the claims as proven be also subsequently reduced by collections from collateral made after proof and before dividends are declared, thus varying the basis of distribution from dividend to dividend? * * * There is one authority, and only one, that upholds the view that a creditor who has once proved his claim shall reduce that claim by all collections made before the declaration of each dividend, on the theory that he is entitled to a ratable distribution on his debt as it is at the time of distribution, and the collections made after proof of claim and before each dividend must reduce the debt pro tanto. The argument ab inconvenienti would weigh strongly against following this case. The rule it lays down would require a readjustment of the basis of distribution at the time of declaring every dividend, and would involve endless labor and confusion."

It is hardly necessary to say that these remarks and this doctrine have no application to this question, for the reason that they were made for the purpose of upholding the decision of the court to the effect that collections upon collateral made subsequent to the declared insolvency should not be taken into consideration for the purpose of reducing the claim,—the very doctrine of this report, as I have before pointed out. Nor are they applicable for the further reason that no inconvenience or delay will accrue from the operation of the rule embraced in class No. 3 of claims recommended to be allowed, and which we are considering, viz.: That claims, though not matured, or which did not, at the time of the appointment of the receiver, constitute a direct obligation, but which have since matured, or will have matured, or constitute such obligation, before any order of distribution is made, should be allowed. If a series of dividends were to be declared, and the proofs and allowance of claims were to be kept open until after the order of distribution, and until the close thereof, the case would be radically different, and such a rule could not be sustained, if for no other reason than that of ab inconvenienti, as it would involve the endless confusion and labor pointed out in the Chemical Nat. Bank case supra. But no inconvenience, delay, or embarrassment to the estate can arise from the application of the rule embraced in the classification referred to. This being the case, and as it is clear that a

more perfect equity will be reached by refusing to make any arbitrary distinction between the rights of creditors whose claims matured yesterday or to-day, provided they are sufficiently matured before any order of distribution is made, it is my judgment that the classification made in that behalf is the proper one to be made. Hoyle v. Scudder, 32 Mo. App. 372; Hussey v. Crawford, 152 Mass. 596, 26 N. E. 424.

It has been suggested, and I think correctly, that the question as to what are and are not provable claims, must be governed by the law of Missouri on that subject. And in this connection section 2513 of the Revised Statutes of Missouri, with which I am familiar, has been called to my attention.     It provides that:

"Upon the dissolution of any corporation already created, or which may hereafter be created by the laws of this state, the president and directors or managers of the affairs of said corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of such corporation, with full powers to settle the affairs, collect the outstanding debts and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same, and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

It is claimed, under the doctrine of Association v. Kellogg, 52 Mo. 583, that bankruptcy is equivalent to dissolution, and that the appointment of the receivers in this case operated as such. And upon this it is suggested that, under the section of the statute above quoted, the assets are to be distributed, in the language thereof, among "the debts due and owing by the corporation at the time of its dissolution." The point is made that all claims, of whatever character, not then absolutely due and owing, are not entitled to recognition. I am of the opinion that, considered alone, this statute will not bear that construction. If this be not so, then the directors who are made trustees might properly pay over to the stockholders all moneys left in their hands after paying the claims already matured, notwithstanding there were other and perhaps the most important of all its obligations still outstanding, and which only the mere lapse of time was wanting to make an absolute obligation. It would seem that such a doctrine would constitute a standing inducement to dishonest stockholders and directors to work a dissolution by insolvency or ceasing to do business, when the bulk of the corporate indebtedness was not yet mature. But when this statute is taken along with the one relating to assignments for the benefit of creditors, which, I take it, is the one that controls the present case, the matter is placed beyond question. This statute (section 424, Rev. St. Mo. 1889) provides that the assignment shall be "for all the creditors of the assignor in proportion to their respective claims." And under this section it is expressly held by the court of appeals, in the case of Hoyle v. Scudder, 32 Mo. App. 372, that:

"A claim of unliquidated damages for breach by a lessee of his covenant to deliver up the premises at the end of the term 'in as good condition and order as the same are now in' may be proved and allowed before the lessee's general assignee as the demand of a creditor, if the lease was made before the assignment, and the damages have matured in time for adjustment and allowance without prejudice to the winding up of the estate."

The opinion was delivered by Judge Seymour D. Thompson, not only a distinguished jurist, but one of the very ablest legal authors of the time. In the course of it he gives the following reasons for his conclusion:

"The statute relating to assignments nowhere defines or limits the demands which shall be provable before the assignee. It merely recites (Rev. St. § 442) that the assignee shall, at a stated time and place, 'proceed publicly to adjust and allow demands against the estate and effects of the assignor.' By the next section, he shall 'commence the adjustment and allowance of demands against the trust fund' at 'a given hour, and continue the same a stated length of time, and in the same section there is a proviso saving the rights of 'any creditor who shall fail to lay his claim before said assignee during said term, on account of sickness,' etc. The next section empowers the assignee to examine witnesses on oath touching any claim exhibited to him for allowance. In other sections the words 'demand' and 'claim' are used. indifferently to describe the debts which the assignee shall allow. Section 424, defining the purposes of voluntary assignments for the benefit of creditors, provides that they shall be 'for the benefit of all the creditors of the assignor in proportion to their respective claims.' A strict and technical construction of the statute would probably result in the contention, which has been ably urged on behalf of the assignee in this case, that a demand which does not exist at the time when the assignment is made, in any acknowledged or liquidated form, and which depends upon a contingency which may never happen, and which, when it does happen, presents itself in the form of an unliquidated demand, is not within the terms of the statute. We have been cited to two cases in other jurisdictions which uphold this view. In re Church (R. I.) 14 Atl. 874; In re Adams, 67 How. Prac. 284. It is not denied by the learned counsel for the appellant that the statute embraces debts which were contracted by the assignor prior to the assignment, but which were by the terms of the contract payable at a date subsequent thereto; in other words, debts which fall within the descriptive words used by the civilians,—"debitum in præsenti, solvendum in futuro." But, although the demand preferred in this case arose out of the breach of a contract which the assignor had entered into before the date of the assignment, which contract might possibly not be broken at all, and because, when broken, it gave rise to a cause of action sounding in damages, and not to a liquidated demand, it is supposed that it is not within the statute. Moreover, it is forcibly argued that, when the assignment is made, the assigned property is, by the force of the statute, impressed with a trust for the benefit of those who are creditors at that time, and not for the benefit of those who, by some subsequent breach of contract, wholly contingent and conjectural at the time of the assignment, become, in a sense, creditors of the assignor thereafter. We do not seek to disparage the force of this reasoning, but we are nevertheless of the opinion that a claim of this nature comes within the equity of the statute. Why should it be excluded? It is, in point of justice and conscience, confessedly, a meritorious claim, provided the damages which the claimants contend for have been made good by their evidence. The reason given by the court of common pleas of the city of New York in Re Adams, supra, for disallowing a somewhat analogous claim, was that the allowance of claims of such a nature, maturing upon future contingencies, would have the effect of keeping the administration of the assigned estate open for an indefinite length of time. This argument can have no force, when applied to a claim, such as the present, which matured and was presented to the assignee for allowance in time to be allowed and paid out of the assets without in any wise delaying the administration. We agree that

the possibility of claims of the present kind maturing at some indefinite period subsequent to the assignment ought not to operate to delay the administration of the assigned estate, but where, as in this case, they do mature in time to be presented to the assignee, to be proved up before him, and to receive their ratable share of the proceeds of the sale of the assigned property, without delaying the administration, we see no reason, growing out of the language or policy of the statute, why they should not be allowed and paid."

It seems to me that this decision, with the reasonings upon which it is based, construing the very statute which must govern the provability and allowance of claims against an insolvent estate, absolutely disposes of the question respecting the correctness of classification No. 3 of claims to be allowed. A difficulty arises, however, in relation to the application of this classification to some of the guaranties of payment, qualified by what we will call the "two-years provision" contained in guaranties Nos. 3, 4, 5, 7, 8, and 9, hereinbefore set out. (1) In respect to some of these guaranties, no default has occurred in the principal obligation. (2) In respect to, some, default in the principal obligation had occurred, and the two years had expired before the receivers were appointed. (3) In respect to others, default occurred before, but the two years did not expire until after, the appointment of the receivers. (4) In respect to some others, both default and the expiration of the two years have occurred since such appointment. (5) And in respect to still others, the default has occurred since the appointment, but the two years have not fully expired. This condition of affairs calls for a construction of the guaranty referred to as applied to each of the particular facts stated.

As preliminary to this consideration, it may properly be remarked that these contracts, in whatever form phrased, were made by the Lombard Company for its own benefit. It was organized to do that kind of business, and the vast amount of securities it was able to dispose of was to a very great extent, if not almost entirely, due to the influence of the company's guaranty, the ordinary investor doubtless believing that the company was absolutely held to the extent of its assets to pay all of its obligations. The money paid by the investor went into the company's treasury for its own benefit. In this respect it differs from the ordinary obligation of a guarantor, which is generally executed as an accommodation to and for the benefit of the maker. It is rather one that comes within the principle laid down by Daniel on Negotiable Instruments (section 1763), where it is said:

"There are cases in which the guaranty is really to answer for one's own debt, though having the appearance of a promise to answer for another."

In view of these facts and principles, we will now consider the guaranty in question as applied to the different state of facts above stated: First, as to those where no default of any kind has occurred in respect to the principal obligation, it is clear to my mind that claims of this kind should not be allowed. They are purely contingent. No default has occurred, and, under the circumstances, it is not likely there will be. I have accordingly classed these claims

as nonprovable ones in classification No. 2 of claims which should be rejected. Second, as to those in respect to which default either in the payment of the interest or principal had occurred, and the two years had expired, before the receivers were appointed. These, to my mind, are clearly provable claims, and they are designed to be embraced in class No. 1 of claims that should be allowed. Third, as to those where the default occurred before, but the two years did not expire until after, the appointment of the receivers. In accordance with the reasonings and conclusions hereinbefore contained, I am of the opinion that these claims are provable, and I have accordingly embraced them in class No. 3 of claims which should be allowed. Fourth, as to those where both the default and the expiration of the two years have occurred since the appointment of the receivers. Upon the same reasoning, it is my judgment that these should be regarded as provable claims, and they are accordingly embraced in said class No. 3 of claims which should be allowed. Fifth, as to those where the default has occurred since the appointment of the receivers, but the two years have not fully expired. It is upon this class of claims, arising under said guaranty of payment, that the greatest difficulty, to my mind, arises. If these claims remain purely contingent, then, in my judgment, they are not entitled to allowance. On the other hand, if the obligation of the guarantor became direct and absolute on the failure of the maker to pay at maturity, and the legal effect of the two-years stipulation was merely to defer the time of actual payment until the expiration of that period, then the obligation ceased to be contingent and became direct and absolute.

A brief reference to authorities with regard to the character and office of the guaranty, when executed by the payee of an obligation, will throw some light on the inquiry: Daniel, Neg. Inst. § 1762, says:

"There are cases in which the guaranty is really to answer for one's own debt. * * * Where one who sells a note guaranties its payment, the guaranty is an original undertaking, and need not even be in writing."

Again, and upon the same subject, the same author says (section 1761):

"Where the payee or holder of a note transfers it and guaranties the payment of it, the consideration moves directly to him for his own benefit. It is really his own debt that he promises to pay in a particular way, and not the debt of another. And the clause of the statute respecting the promise or engagement to pay a debt of another has no application to it."

Again (section 1769):

"If A. guaranties expressly to pay the note of B. to C., he becomes absolutely liable for its payment upon B.'s default."

Dickerson v. Derrickson, 39 Ill. 575; Allen v. Rightmere, 20 Johns. 365.

In Gage v. Bank, 79 Ill. 62, the makers of a promissory note transferred it by the following indorsement: "For value received we guaranty the payment of the within note at maturity." Held that

each was absolutely liable as a principal, and not entitled to any notice. The court says:

"It was a joint and several undertaking to pay the note at maturity. They were both principals, and both and each bound to pay the note. As between them and the maker of the note, the holder was under no obligation to demand payment of the maker, and, on his default, to notify the guarantors, for they undertook to pay at all hazards. It was their duty, and of each of them, on its maturity, to go to the holder and take it up. The holder was under no legal or moral obligation to hunt them and make demand. * * * This is not a case of principal and surety, but it is a primary, positive undertaking that they will pay the note at maturity."

In Allen v. Rightmere, 20 Johns. 365, the indorsement by the payee of the note was in the following form: "For value received I sell, assign, and guaranty the payment of the within note," etc. The chief justice, in delivering the opinion of the court, said:

"Proof of demand and notice of nonpayment were not necessary. The defendant's engagement is, in effect, that Toan should pay the note or that he would pay it. It is the duty of the debtor to seek the creditor, and pay his debt on the very day it becomes due. As regards the maker of the note, and to render him liable, no demand is necessary. A demand of payment is necessary only to fix an indorser or surety, whose undertaking is conditional. An indorser does not absolutely engage to pay. It is a conditional undertaking to pay, if the maker of the note does not, upon being required to do so, when the note falls due, and upon the further condition that the indorser shall be notified of such default. The defendant insists that he stands in the situation of an indorser merely, but such is not the fact. The undertaking here is not conditional. It is absolute that the maker shall pay the note when due, or that the defendant will himself pay it."

"A guaranty of payment of a note is an absolute, unconditional undertaking on the part of the guarantor that the maker will pay the note when due, or that the guarantor will pay the debt at maturity if the maker does not; and the contract of the guarantor is broken upon the failure of the maker to meet this obligation." Baylies, Sur. p. 17, subtit. "Guaranties of Payment and of Collection."

Allen v. Rightmere, 20 Johns. 365; Day v. Elmore, 4 Wis. 190; Evans v. Bell, 45 Tex. 553; Gage v. Bank, 79 Ill. 62; Lent v. Padelford, 10 Mass. 230; Peck v. Frink, 10 Iowa, 193; Heaton v. Hulbert, 3 Scam. 489.

In view of the doctrine thus laid down, and under the facts of this case, it is my opinion that, upon default of the maker, the obligation of the company, as guarantor, to pay, ceased to be collateral and contingent, and became direct and absolute, with the right reserved that it should not be compelled to pay until the two years had expired, but with the privilege that it might pay at any time within that period. In other words, the guaranty should be construed, in legal effect, the same as if reading: The company guaranties the payment of the principal on the following conditions: (1) That the maker fail to pay at maturity; and (2) that the company, in case of default of the maker to pay at maturity, shall not be compelled to pay until the expiration of two years thereafter, but have the privilege of paying at any time it desires to within that period. For these reasons I think these claims, viz.: Those where default has been made by the maker, but the two years has not fully expired, should be treated as direct obligations, with deferred time

of payment, and be embraced in class No. 3 of claims to be allowed. The case of Manufacturing Co. v. Gittings, 3 C. C. A. 422, 53 Fed. 45, is cited as opposed to this view. The point presented and decided in that case was that a claim arising on a guaranty was not provable against the estate of the insolvent guarantor where it appeared that the principal obligation would not fall due for many years, and that no default in payment of interest coupons or of any kind had occurred. The court held that the claim was purely contingent, and so I have held in reference to just such claims, and embraced them in class 2 of claims that should be rejected. The arguendo statement in the opinion, that there must not only be a cause of action, but a right of action, and that claims not due have no standing, cannot, it seems to me, be taken in a literal sense,—certainly not as applied to the insolvent laws of this state, which I take it, control the rights of the parties in the present case. For, if so, then obligations of the highest and most meritorious character would be excluded, if not fully matured. I do not understand that such a doctrine is contended for in this case. If it prevailed, it would exclude the larger part of the debenture bonds, and all of the unmatured direct obligations of the company. I think the true rule is that, if the cause is either actionable or capable of liquidation, it is sufficient.

Class No. 4. Claims based on bonds executed by any of the auxiliary companies. For the reasons pointed out on the first page of this report, these claims are clearly allowable as hereinbefore specified.

Class No. 5. Claims embraced in Subcompany Land Trust. The proving of these claims is provided for by the eighth paragraph of the final decree.

## II. Claims That should be Rejected.

Class No. 1. Those arising on guaranties of collection,—as distinguished from guaranties of payment,—where no foreclosure proceedings or action against the maker has been commenced, and where the holder has not shown proper diligence in efforts to collect his claim from the maker of the note, or out of the mortgaged premises securing it. It is clear to my mind, under the authorities, that claims of this character are not entitled to allowance. Between guaranties of collection and guaranties of payment a broad distinction is taken. "A guaranty of payment of a note is an absolute, unconditional undertaking, on the part of the guarantor, that the maker will pay the note when due, or that the guarantor will pay the debt at maturity if the maker does not, and the contract of the guarantor is broken upon the failure of the maker to meet his obligation. A guaranty of collection is an entirely different contract. It is sometimes defined as an undertaking to pay a debt on condition that the person to whom the guaranty is given shall diligently prosecute the principal debtor without avail, or that the debt will be paid if the principal be prosecuted with reasonable diligence, or that the debt is collectible by due course of law." Baylies, Sur. pp. 17, 18, tit. "Guaranties of Payment and Collection"; Voorhies

v. Atlee, 29 Iowa, 49; Dewey v. Investment Co. (Minn.) 50 N. W. 1032; Durand v. Bowen (Iowa) 35 N. W. 644; Bouche v. Louttit, 104 Cal. 230, 37 Pac. 902; Crane v. Wheeler (Minn.) 50 N. W. 1033; Barman v. Carhartt, 10 Mich. 340; McMurray v. Noyes, 72 N. Y. 523; Insurance Co. v. Wright, 76 N. Y. 445; Allison v. Waldham, 24 Ill. 132. "A guaranty of collection only guaranties the collectibility or goodness of the note, and does not amount to an absolute guaranty of payment, but only that the guarantor will pay it in the event that the holder shall test the collectibility or goodness by regular prosecution of a suit against the maker, and shall be unable by reasonable diligence to enforce its payment. He is only deemed a conditional guarantor of payment." Daniel, Neg. Inst. § 1769. "In some states, the commencement of an action against the maker of a promissory note, and its prosecution to judgment and execution without avail, are conditions precedent to the right to maintain an action against one who has guarantied its collection, without regard to the question of the maker's solvency. In all, or nearly all, of the other states, a suit against the maker of the note is not required before proceeding against the guarantor, if the maker of the note is, at its maturity, wholly and clearly insolvent, so that an action against him would be a mere idle ceremony. But nothing but such insolvency will, in any state, excuse a failure to proceed against the principal debtor before action against a guarantor of collection." Baylies, Sur. p. 139, and the authorities above cited. A fortiori would the rule apply where the guarantied obligation is secured by mortgage. The collateral would have to be exhausted. Nothing can be better settled than these principles. They are embraced in said class No. 1 of claims that should be rejected. The guaranties of collection are embraced in guaranties Nos. 1 and 2. Guaranty No. 3, which seems to be a hybrid of a guaranty of collection and of payment, I hold to be, in legal effect, a guaranty of payment.

Class No. 2. Those not matured, and in respect to which there has been no default in payment of interest or of any kind. Claims of this character are too purely contingent for allowance. This, as we have already seen, was the very point decided in Manufacturing Co. v. Gittings, 3 C. C. A. 422, 53 Fed. 45.

Class No. 3. Those in respect to which extension of time of payment of the principal obligation has been made by a new and valid agreement between the holder and the debtor. No argument is needed to enforce this proposition. The contract has been changed, and the guarantor is discharged.

### III. Other Rules Governing.

Rule 1. Claims should be held to have matured, not only on their due date, but on default of the maker in payment of interest or other preliminary obligation, when, by the terms of the contract, such default is made to precipitate the maturity of the debt. I submit that this proposition is correct, and should be applied in the present case. See copy of bonds containing the provision referred to at close of report.

Rule 2. The date up to which the interest on claims should be calculated should be that of the appointment of the receivers on September 18, 1893. This rule is based both upon reason and authority. If the rule were otherwise, the claimant who delayed until the last to file his claim would have his negligence rewarded by the increased interest which he would receive. Interest does not run, as against the estate, after the assignment or declared insolvency, unless there are funds sufficient on hand to pay all of the demands and accrued interest; otherwise, interest is to be allowed up to the time of the declared insolvency only. Chemical Nat. Bank v. Armstrong, 8 C. C. A. 155, 59 Fed. 372; White v. Knox, 111 U. S. 784, 4 Sup. Ct. 686; Richmond v. Irons, 121 U. S. 27, 64, 7 Sup. Ct. 788; National Bank of Com. v. Mechanics', etc., Bank, 94 U. S. 437; Bank v. Peirce, 156 Mass. 307, 31 N. E. 483.

Rule 3. Collateral security, by mortgage or otherwise, held by the claimant, does not affect the claimant's right to prove up for the full amount of his claim; nor does the fact that he has realized a part of his claim from the subjection of such collateral, since the date of the receivership; but he is entitled in such case to receive distributions or dividends from the general estate, until such dividends, added to the amount realized from the collateral, are equal to or sufficient to satisfy his debt. Upon this proposition there is some conflict of authorities, but the great volume of them is in its support. This was the exact point decided in the elaborately considered case of Chemical Nat. Bank v. Armstrong, 8 C. C. A. 155, 59 Fed. 372, in which all of the authorities on the subject are collated and shown by the overwhelming weight to sustain the doctrine therein announced. To the same effect see Tod v. Land Co., 57 Fed. 47; Lewis v. U. S., 92 U. S. 618; People v. E. Remington & Sons, 121 N. Y. 328, 24 N. E. 793; Fifth Nat. Bank v. Clinton Circuit Judge, (Mich.) 58 N. W. 648; Bank v. Haug, 82 Mich. 607, 47 N. W. 33; In re Bates, 118 Ill. 524, 9 N. E. 257; Kellogg v. Miller, 22 Or. 406, 30 Pac. 229; Bank v. Byles, 67 Mich. 296, 34 N. W. 702; Walker v. Baxter, 26 Vt. 710; Allen v. Danielson, 15 R. I. 480, 8 Atl. 705; Miller's Appeal, 35 Pa. St. 481; In re Miller's Estate, 82 Pa. St. 113; Bank v. Kendrick (Tenn.) 21 S. W. 1070. It seems to me that the doctrine is so overwhelmingly settled by the authorities as not to be open to serious question.

All of which is respectfully submitted.

## Addenda.

The following copy of one of the bonds will show the provision relating to the precipitation of the maturity of the obligation arising from nonpayment of interest, hereinbefore referred to:

Real-Estate First Mortgage.

No............ { Negotiated by the Lombard Investment Company, 13 Sears Building, Boston, Mass. Western Office, Kansas City, Mo. } $.............

Security                                         Fidelity

Coupon Bond.

On the first day of —— eighteen hundred and —— for value received, —— promise to pay to the order of the Lombard Investment Company, the

principal sum of ―――― dollars, with interest thereon at the rate of ―――― per cent. per annum from date until paid, said interest being payable ―――― annually according to the tenor of ―――― interest coupon notes, one being for ―――― dollars and ―――― each for ―――― dollars, bearing even date herewith; both principal and interest coupons payable at the western office of the Lombard Investment Company, Kansas City, Missouri. And if default be made in the payment of any interest coupons or any part thereof at the time and place aforesaid, then said principal sum shall at once become due and payable. This bond and the interest coupons thereto attached are secured on real estate by a deed of trust of even date herewith, duly recorded in the county of ―――― and state of Missouri.

This bond shall bear interest at the rate of ten per cent. per annum, payable semiannually from maturity, or after default of any of the conditions mentioned herein, and in the deed of trust securing the same until paid

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Dated at Kansas City, Missouri, on the ―――― day of ――――, 18―.

The following is a specimen of one of the debenture bonds referred to on page 1:

No. ――――                                                            Series ――――

### United States of America.
### Six per Cent. Ten-Year Debenture.
### Capital $4,000,000.

The Lombard Investment Company, for value received, hereby promises to pay to bearer, or, in case of registration, to the registered holder hereof, the sum of two hundred dollars, on the first day of September, 1900, with interest thereon at the rate of six per cent. per annum, payable semiannually, on the first days of March and September, in each year, on the presentation and surrender of the interest coupons hereto attached, both interest and principal payable at the office of the Lombard Investment Company, in Boston, Massachusetts, New York, N. Y., or Philadelphia, Pennsylvania.

The said Lombard Investment Company reserves the right to redeem this debenture at the maturity of any coupon on or after September 1st, 1895.

This debenture is No. ―――― of series ―――― of similar debentures numbered from fifty-five hundred and sixty-one to fifty-seven hundred and fifty, inclusive, of various denominations, amounting in the aggregate to one hundred thousand dollars.

To secure the payment of these debentures, the Lombard Investment Company has deposited with B. Lombard, Jr., James L. Lombard and H. W. L. Russell, Trustees, certain collaterals, amounting in the aggregate to one hundred and five thousand dollars; said collaterals being held by said trustees as a guaranty fund for the payment of these bonds, and are subject to the inspection of the holders of the same at all reasonable times.

This debenture is the direct obligation of the Lombard Investment Company, and is not negotiable until the certificate on the reverse hereof has been signed by the said trustees.

In testimony whereof, the Lombard Investment Company has caused these presents to be executed by its president this first day of September, 1890, with the seal of the company affixed.

―――――――, President.

―――――――, Assistant Treasurer.


CALDWELL, Circuit Judge. Now, on this day, this cause comes on to be heard on the exceptions filed to the report of the master on the classification of claims herein, the parties appearing by their

respective counsel, and further time for the renewal of exceptions and the lying of the report on file having been properly waived by counsel, and said exceptions to said report having been argued, submitted, and duly considered, the same are overruled, and the said report of the master on the classification of claims is hereby in all respects approved and confirmed.