In the Matter of the Receivership of D. ROSS AND SON, INC.

*New Castle, May 4, 1915.*

Where an insolvent corporation had contracted with a pattern company to take its goods, the contract providing that, upon failure of the buyer to pay for stock within two weeks after demand by the seller, the contract should be deemed broken and the buyer should be assessed

liquidated damages in an amount equaling one-third of the purchase price of the patterns which it had agreed to take from the breach of contract until the time originally limited for its duration, and where the pattern company had given notice to the insolvent corporation to pay within two weeks, a receiver for the insolvent corporation being appointed one day before the expiration of such time, the pattern company had a claim for breach of contract provable in the insolvency proceedings, since the standard by which all claims against an insolvent corporation are to be tested in regard to their provability is whether or not they are subject to accurate reckoning within a period that will not delay settlement of the estate to the prejudice of creditors, and, if so, they are provable, even if contingent.

Where the contract of a fashion company to furnish patterns provided that upon breach the buyer should be liable in liquidated damages for one-third of the value of the patterns he had agreed originally to purchase for the time after the breach, stating that such mode of calculating damages was agreed upon "as being the nearest estimate we can make of what will fairly compensate either of us if the other breaks this contract," the amount thus established was not a "penalty," and was recoverable upon breach as liquidated damages; it being impossible to fix with certainty what exact pecuniary injury either party would suffer from a breach.

The appointment of a receiver of an insolvent corporation effects an anticipatory breach of an executory contract of the corporation and gives a cause of action, *provided*, the receiver does not within a reasonable time after his appointment adopt the contract and perform it in the place of the insolvent corporation.

In the matter of exceptions filed by the receiver of Ross & Son, Incorporated, to a claim by the McCall Company of liquidated damages for breach of contract. The facts are stated in the opinion of the court.

*Christopher L. Ward, Robert H. Richards, and Aaron Finger*, for the exceptant.
*Leonard E. Wales*, for McCall Company.

THE CHANCELLOR. The exceptions to the claim of the McCall Company relate to these facts: The Ross Company agreed to buy from the McCall Company a certain quantity of patterns during a term of five years, which would expire on December 12, 1918. It was provided that if either should

"intentionally" break any of the terms and refuse or fail after two weeks' notice in writing promptly to perform, then the other may be released from all further performance and may recover as estimated and agreed damages a sum of money equal to one-third of the agreed charge of all goods agreed to be delivered during the time the contract would have to run after such notice be given. It was also provided that the goods would be paid for within a fixed period of time after shipment, and if not so paid for, then after two weeks' notice in writing the seller had a right to consider such failure to pay as a breach of the contract.

The Ross Company failed to pay on August 4, 1914, for the goods shipped theretofore, and on August 7, 1914, the McCall Company sent a letter to the Ross Company, received August 8, 1914, stating that owing to the failure of the Ross Company to perform their contract and pay for the goods furnished, the McCall Company gave two weeks' notice to the buyer to pay for the goods, and that in the event of a failure to do so it would claim release of further performance and would seek payment of the liquidated damages according to the method fixed in the contract. The time for which this notice ran expired on August 22d, according to the solicitor for the McCall Company, and the receiver respectively, and the receiver of the Ross Company was appointed on August 21, 1914.

The claim for damages as filed is for $1,267.27. This is ascertained by calculating the number of issues of patterns, etc., which the Ross Company agreed to take between the time of the expiration of the two weeks' notice, August 22, 1914, and the expiration of the contract, December 12, 1918, and by dividing that number by three, as provided in the contract. The exceptions taken by the receiver are that by the appointment of the receiver before the two weeks' notice had expired, the control, management and possession of all the property of the Ross Company was taken from the company and vested in the receiver, and the company was prevented from paying the debt then due, there being no intentional breach of the contract. It is also a question whether the basis

of calculating the damages is permissible, as being a penalty instead of liquidated damages. The exceptions were argued upon the statement of the claim and the exceptions, there being no disputes as to questions of fact.

From the above it appears, then, that the question raised by the exception is whether the seller can claim liquidated damages where the only breach claimed is a failure to pay for an installment of patterns delivered, and where before the two weeks allowed by the contract for notice to the buyer a receiver was appointed for the company on the ground of its insolvency.

First, then, as to the right of the McCall Company to damages. According to the contract the buyer having failed to pay for an installment of goods, and the seller having by giving notice elected to treat such failure as a breach of the contract, the buyer still had two weeks of grace after such default within which to pay and avoid the consequences of the breach, viz., a rescission of the contract and a recovery of damages for the breach. But within that period of two weeks, and before it expired, the receiver was appointed. By the appointment of the receiver and the taking possession of all the assets of the buyer, its corporate activity was paralyzed, and it was, therefore, prevented by the court from performing its obligation to pay for the goods within the period of grace.

In the case of *Du Pont v. Standard Arms Co.*, 9 *Del. Ch.* 315, 81 *Atl.* 1089, in considering the claim of James J. Hartley, it was decided in this court that a contract for personal services to be rendered to a corporation was terminated by the appointment of a receiver for the corporation, and that the servant could not recover damages, though under the employment he was entitled to three months' notice of the termination of the employment. In the opinion filed this was based clearly and expressly on the similarity between the consequences resulting from the death of an individual employer and the appointment of a receiver of an insolvent corporate employer. When a receiver elects to terminate executory contracts of personal service the situation is the same as that produced by the death of an individual employer. It was there said that no

opinion was expressed concerning the right of creditors with claims other than for personal services.

In deciding the validity of the claim of the McCall Company the question is squarely raised, whether the appointment of a receiver for an insolvent corporation prevents the enforcement of a right to damages for the breach of an executory contract made by the insolvent company. In this case it is certain that there is not sufficient assets to pay in full the debts of the insolvent company, and there is therefore no possibility that any benefit will result to the shareholders of the company.

Since the decision respecting the Hartley claim as a creditor of the Standard Arms Company there have been several decisions, chief of which in importance is that of Judge Noyes in the United States Circuit Court of Appeals in the case of *Pennsylvania Steel Co. v. New York City Ry. Co.*, 198 *Fed.* 721, 735, 738, a noteworthy opinion which has done much to settle my views on the main question raised by these exceptions. There were several claims considered in administering a receivership of two city railway corporations, and the decision as to the claim of the Metropolitan Express Company is the one of special service here. The express company by contract had a right to conduct the express business over the lines of the street railway company for a term of twenty years, and during that term the railway company became insolvent and a receiver was appointed for it. The receiver repudiated the contract and refused to perform it. In the court below the claim of the express company for damages based on loss of profits was rejected by the master and the district court sustained the finding. On appeal, the court below was reversed by the appellate court. In the suit for the appointment of the receiver the railway company admitted its insolvency and joined in asking for a receiver. The master held that the weight of authority favored the rule that where there has been no breach of an executory contract up to the date of an involuntary adjudication of insolvency, damages resulting from that fact, or from any later breach, cannot be proven as against other creditors whose claims are then absolute. The cases he cited relate to claims for rent not accrued, for damages for subsequent breaches

of outstanding contracts both for the sale and purchase of goods, for claims on guaranties which had not ripened into fixed liabilities at the date of the adjudication of insolvency, and for claims under contracts for personal services. See 188 *Fed.* 343. This opinion was concurred in by Judge Lacombe in the district court, without the filing of a separate opinion of his own. Judge Noyes in the appellate court thus stated the general underlying equitable considerations which should govern the administration of the assets of insolvent corporations:

"The assets of an insolvent corporation belong to its creditors. Although, not strictly speaking a trust fund, they partake of the nature of one. The administration of the estate is for their benefit. Its purpose is to make an equitable distribution. Equality is equity. Debts and liabilities, present and future, certain and contingent, stand upon the same equitable basis. If delays were unimportant, the settlement of estates would be kept open until contingencies should become certainties. If courts were omniscient, distribution would always be through the resolving of all contingencies and the ascertainment of the present worth of all demands. But courts cannot look with certainty into the future. Delays are important. The settlement of estates cannot be held open to await contingencies. Orderly administration requires that at some reasonably speedy time all claims should be so liquidated as to afford a basis for distribution.

"A court of equity, then, in prescribing what claims shall take in the distribution of the estate of a corporation must regard, on the one hand, the substantial right of all creditors to share in their debtor's property, and, on the other, the necessity for expeditious administration and, giving due consideration to both, must make rules which are practicable as well as equitable."

Without attempting to define contingent demands, or distinguish between them, the court said the distinction is between claims which are, or can be, reduced to dollars and cents and those which cannot, and said:

"So, without laying stress upon the question whether claims are (1) past due, (2) immature, or (3) contingent, the real way we should divide them with respect to the question of provability is into these two classes:

"(1) Claims of which the worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of the estates;

"(2) Claims which are so uncertain that their worth cannot be so ascertained.

"The second class of claims cannot be proved.    They may be highly meritorious, but they cannot share in the estate because their amounts cannot be ascertained.

"The first class of claims ought to be proved and share in the estate and this whether they are overdue accounts, immature notes, or claims for damages for breach of contract coinciding with or following the receivership.    It is impossible to point to any equitable ground which would justify a court of equity in excluding the holders of any of such claims from sharing in the estate of their debtor."

The court also said that the time of the appointment of the receiver was not the logical or necessary date for determining the provability of demands.    When the very fact of the appointment of the receiver breaks the obligation and creates the demand it is manifestly inequitable that any technical objection should prevent the proof of the claim, and, said the judge:

"It is not a light thing for a chancery court, acting without statutory direction, to say that a creditor shall lose a demand when he has not been at fault and when the settlement of the estate will not be protracted by allowing it."

Therefore the court adopted this rule:

"Claims which when presented within the time limited by the court for their presentation are certain, or capable of being made certain by recognized methods of computation, should be allowed."

Respecting the claim of the express company, it was considered that the appointment of the receiver of the railway company completely disabled the performance of the contract, and because the railway company admitted its insolvency and joined in praying for the appointment of the receiver, there was such an anticipatory breach of the contract as gave the other party, the express company, an immediate right of action for the damages sustained thereby.    The court on this subject thus expressed itself:

"It is possible that the appointment of a receiver of an objecting corporation, although preventing it from carrying out its executory contracts, might be considered to be the act of the law and not such an act of the

party as would constitute an anticipatory breach of such contracts within the rule. It is probable, too, that bankruptcy and insolvency do not break contracts when they do not in fact prevent performance. Thus the bankruptcy of a lessee does not terminate the lease and the lessee may be holden upon the rent covenant if he be permitted to continue his occupation. But when bankruptcy and insolvency do put it out of the power of the bankrupt or insolvent to perform his executory contracts, and when he does participate in bringing on the proceedings, they constitute the breach of such contract. How can it be otherwise? The situation is the equivalent either of an out and out repudiation or of a complete disablement, and in either case the contract is broken."

It seems, then, that the appellate court considered the principle of anticipatory breach inapplicable in cases where the corporation did not participate in the proceeding for the adjudication of insolvency, or admit insolvency, or join in praying for the appointment of the receiver. I think this is an unwise limitation on the wise rule, that independent of the action of the corporation respecting the suit, the very fact of the appointment of a receiver breaks the obligation and gives a cause of action, provided, of course, the receiver does not within a reasonable time after his appointment adopt the contract and perform it in the place of the insolvent company. Inasmuch as the purpose of a receivership based on insolvency is the protection of all of the creditors of the company and to prevent the inequitable consequences of a scramble for advantage by suits, it is not the duty of the officers of the company to oppose, or delay, a suit for the purpose of a receivership, where insolvency clearly exists, but rather to promote an early adjudication and the taking of possession of the affairs of the company by the receiver. The participation by the officers of the company in the suit of creditors to obtain the receiver should not affect the right to obtain from the assets of the company payment for damages sustained for breach of a contract with the company made. I do not agree to the limitation of the beneficent rule above referred to.

The question has chiefly arisen for decision respecting claims for personal services under executory contracts, but there are a few which relate to other contracts. The following cases support the view here sustained. In New Jersey, in

the case of *Bolles v. Crescent, etc., Co.*, 53 *N. J. Eq.* 615, 32 *Atl.* 1061, the contract was that Bolles should furnish and operate a soda fountain for a term of years for a percentage of the profits, and the contract having been terminated during the term by a receiver in insolvency, the court held that the right of Bolles to damages for the breach was not destroyed by the receivership. See also *Griffith v. Blackwater, etc., Co.*, 55 *W. Va.* 604, 48 *S. E.* 442, 69 *L. R. A.* 124.

On the opposite side of the question are the cases of *Wells v. Hartford Manilla Co.*, 76 *Conn.* 27, 55 *Atl.* 599, where the claim was that of the seller of goods, and *People v. Metropolitan Surety Co.*, 205 *N. Y.* 135, 98 *N. E.* 412, *Ann. Cas.* 1913D, 1180, where a surety company had given bond for performance of a contract and judgment was recovered against the principal after the receiver was appointed for the surety company, and the court held that the claim of a judgment creditor could not be filed in the receivership cause. There are also some cases in the federal courts which are not overruled by the decision of Judge Noyes. The court, in *Malcomson v. Wappoo Mills, et al.*, 88 *Fed.* 680, refused to allow in a receivership case a claim for damages for refusal of the receiver of an insolvent corporation to take a shipment of goods made under a contract made with the company. In *Gay, etc., Co. v. Gittings*, 53 *Fed.* 45, the court refused to recognize as a claim against the assets of an insolvent company for which a receiver had been appointed, a possible liability of that company on its guarantee of the bonds of another company which was still solvent. The decision in the case of *N. Y. Security, etc., Co. v. Lombard, etc., Co.* 73 *Fed.* 537, referred to by Judge Noyes in the case hereinbefore referred to, supports the view taken as to the McCall claim.

It will be seen, then, that there is not much direct authority, and none so strong and convincing as that of Judge Noyes. The conclusion, then, is that the McCall Company is entitled to prove as against the assets of D. Ross & Son, Incorporated, its claim for damages for a breach of the contract made between it and Ross & Son. No delay in the administration of the estate will result from so holding, because, as hereinafter stated,

the amount claimed for such damages will be allowed as stipulated in the agreement without further adjudication.

Second.   What damage is the McCall Company entitled to prove? The remaining question is whether the McCall Company is entitled, as estimated or agreed damages, to the sum claimed as ascertained by the method provided in the contract. This depends on whether the amount when so calculated is considered to be liquidated damages, or a penalty.

There are, it seems, only two reported cases in Delaware which relate to the subject of liquidated damages.   In *Batton v. Bradley*, 3 *Houst*. 215, the defendant had agreed to lease a farm to the complainant at a money rent, and each became bound to the other in $500 for the performance of the agreement.   Before the term began the lessor sold the farm and the lessee sued on the agreement for damages.   The court charged the jury that the plaintiff could recover only for the precise loss and injury directly sustained by the breach of the contract, and not more than $500.   In *Jester v. Murphy*, 2 *Del. Ch*. 171, the complainant sold a store to the defendant and agreed to take it back if the defendant should not resell it within a year, and gave a bond with a written defeasance declaring the bond had been given for "security and safety."   The bond was held not to be stipulated damages, but as security for the loss actually sustained by the refusal of the seller to take back the property sold.   Neither of these cases throw much light on the question raised here.   They are not fully reported, and it was not stated in either of the agreements that the forfeit was eith a penalty or liquidated damages.   In both cases the damages were ascertainable with reasonable accuracy.   Each was correctly decided, but had no bearing on other cases where the facts were different.

In determining whether the agreed compensation for a breach of the contract is a penalty or liquidated damages there are many diverse principles, and it is difficult to lay down rules on the subject.   Prof. Pomeroy has thus stated a general principle:

"In general, where the contract is for the performance or non-performance of some act other than the mere payment of money, and there is no certain measure of the injury which will be sustained from a violation of

the agreement, the parties may, by an express clause inserted for that purpose, fix upon a sum in the nature of liquidated damages which shall be payable as a compensation for such violation. The question whether a sum thus stipulated to be paid is a 'penalty' or is 'liquidated damages' is often difficult to determine. It depends, however, upon a construction of the whole instrument, upon the real intention of the parties as ascertained from all the language which they have used, from the nature of the act to be performed, or not to be performed, from the consequences which naturally result from a violation of the contract, and from the circumstances generally surrounding the transaction. It has been repeatedly held that the words 'penalty' or 'liquidated' damages, if actually used in the instrument, are not at all conclusive as to the character of the stipulation." 1 *Pomeroy's Equity Jurisprudence* (3rd Ed.) §440.

The evident purpose of the contract under consideration was the creation of an exclusive agency for the sale of fashion patterns to be supplied by the McCall Company to Ross & Son in certain quantities, and at certain prices. It was evidently important that the stock of patterns should be kept to a certain quantity, with renewals and a return of discarded patterns, with allowances for those returned. Indeed, viewing the whole contract and the nature of the acts to be performed, and the reason therefor, there does not appear to be any reason why the parties did not mean just what they said in plain unmistakable language. They said that in case either should elect to terminate the contract for a fault of the other, a certain method of calculating the damages for the breach would be available, viz., one-third of the agreed charge for all goods which would otherwise have been delivered during the rest of the time the contract had to run. There is no suggestion that it was an unfair method. They say also that such method of calculating damages was agreed upon "as being the nearest estimate we can make of what will fairly compensate either of us if the other breaks this contract." With such unmistakable language, showing deliberation of the consequences to each of the fault of the other, this court cannot set up some other standard, or say that the one deliberately adopted by the parties should not govern. It certainly appears that it is at least very uncertain what the injury has been to the McCall Company by the breach by Ross & Son. The measure of damages to

either for a breach of the contract would be the profits which would otherwise have been obtained by one in furnishing, and by the other by selling, the patterns. But the method of ascertaining these profits would be very uncertain, for the reason that the buyer had a right to return discarded patterns and the seller would be obliged to give credit therefore at a fixed price, and the uncertain element in the calculation was the number to be returned. With such uncertainty and no unreasonableness of method of estimating the injury appearing, the court should adopt the method of the contract. The claim made is correctly calculated by the method fixed in the contract.

The conclusion is that there is no valid objection to the claim based on the method of calculating the amount of it, and the claim should be allowed as proved.