**WILMINGTON HOUSING AUTHORITY, a Delaware public corporation, Plaintiff,**

v.

**PAN BUILDERS, INC., a New Jersey corporation, and Pennsylvania National Mutual Casualty Insurance Company, a Pennsylvania corporation, Defendants.**

**Civ. A. No. 86–112–JLL.**

United States District Court, D. Delaware.

July 10, 1987.

---

Clifford B. Hearn, Jr., Wilmington, Del., for plaintiff.

Michael W. Modica of Aerenson, Ferrara & Lyons, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

Plaintiff Wilmington Housing Authority ("WHA") instituted this diversity action against defendant Pan Builders, Inc. ("Pan"), and Pan's surety defendant Pennsylvania National Mutual Casualty Company ("PNMC") to recover $72,000 in liquidated damages for Pan's failure to timely perform two heating installation contracts for WHA. (Docket Item ["D.I."] 1.) At issue in this Memorandum Opinion is Pan's and PNMC's motion for summary judgment requesting that this Court find the stipulated damages provision in Pan's contracts with WHA to be an unenforceable penalty and thus limit WHA's recovery to the actual damages, if any, WHA sustained due to Pan's delay in performance. (D.I. 52.) For the reasons stated below, the Court will deny Pan's and PNMC's motion.

## FACTUAL BACKGROUND

In early July of 1984, WHA placed an advertisement in area newspapers to solicit bids from contractors for the installation of gas fired furnaces and hot water heaters in 638 occupied family rental units. (D.I. 53A at A-23 to A-24.) WHA divided the work into eight projects and solicited bids on each project separately. (*Id.*) Bidding opened on all projects on July 31, 1984. (*Id.*)

Pan was the low bidder on two of the projects and was consequently awarded the contracts for those projects. (D.I. 55B at A-112 to A-115, A-116 to A-119.) Contract 066-1-4A-16 ("066") was for the installation of gas fired furnaces and hot water heaters in 74 WHA units at a contract price of $334,000. (D.I. 53A at A-2.) Contract 068-1-5A-16 ("068") was for the same work in 52 units at a contract price of $265,000. (*Id.* at A-12.)[1]

---

1. After receiving the bids, WHA realized that completing the work in all 638 units with even the lowest bidders would put it well over the budget HUD had authorized. (D.I. 53A at A-23 to A-24.) Consequently, WHA reduced the scope of the project from 638 units to 187 "critical units" believed to be in the greatest need of furnace and hot water heater replacement.

(*Id.*) All eight contracts were affected. Contract 066 was reduced on October 5, 1984, from 74 units to 9 units at a contract price of $49,731.12. (*Id.* at A-25.) Contract 068 was reduced on the same date from 52 units to 15 units at a contract price of $91,442.25. (*Id.* at A-26.) All of the original low bidders, including Pan, accepted WHA's reductions and agreed

After some initial delay, the reasons for which the parties dispute, a pre-construction meeting was held between WHA and Pan on September 26, 1984. The parties executed contracts 066 and 068 at this meeting and WHA issued Pan notices to proceed on both contracts. (D.I. 53A at A–2, A–4, A–12, A–14.) The notices to proceed required that both contracts be substantially complete by October 13, 1984. (*Id.* at A–4, A–14.) The completion date on contract 066 was subsequently extended to November 20, 1984, by agreement of both parties. (D.I. 53 at 8; 55 at 3.) The completion date on contract 068 was never extended.

The parties disagree as to the exact date of substantial completion. Pan contends that both contracts were substantially complete no later than November 20, 1984. (D.I. 53 at 8.) WHA insists that neither contract was substantially complete until December 7, 1984, the date the heaters passed a required city inspection. (D.I. 55 at 3.)

**THE CONTRACT**

Contracts 066 and 068 both contained a provision requiring Pan to pay $1,000 a day in stipulated damages for each day the work remained unfinished after the completion date. (D.I. 53A at A–40.) The clause read in full:

1.3 Liquidated Damages

As actual damages for any delay in completion are impossible of determination, the contractor and his sureties shall be liable for and shall pay to Wilmington Housing Authority the sum of $1000.00 as fixed, agreed and liquidated damages for each calendar day of delay until the work is completed and accepted.

(D.I. 53A at A–40.)

WHA routinely includes such clauses, ranging in amount from $100 to $1,000 a day, in its construction contracts. WHA's Director of Technical Assistance, Mary Anne Russ ("Russ"), had the responsibility for setting the stipulated amounts in contracts 066 and 068. (D.I. 45 at 19.) Russ claims the $1,000 a day figure was a forecast of the potential damages WHA could have faced if the projects were not completed on time. (*Id.* at 20.) Foremost among those damages was the possibility that WHA would be exposed to personal injury and property damage liability if one or more of the old furnaces malfunctioned and injured WHA tenants or their property. (*Id.*) Secondarily, Russ considered the possibility of rent loss should the units be unoccupied for an extended period of time. (*Id.*)

**ANALYSIS**

Pan and PNMC have moved for summary judgment on their position that the stipulated damages provision contained in contracts 066 and 068 is an unenforceable penalty. (D.I. 52.) Pan and PNMC must overcome a formidable burden if they are to prevail on their motion. A party moving for summary judgment bears the burden of convincing the Court that no genuine issue of material fact exists with regard to the motion and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (1986). Further, a court deciding a summary judgment motion must view all facts, and any reasonable inference from those facts, in the light most favorable to the party opposing summary judgment. *Adickes v. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). As will become apparent, the Court believes that there is an unresolved genuine issue of fact with regard to Pan's and PNMC's motion, and summary judgment is thus inappropriate.

■ It is generally accepted that parties to a contract may agree on a fixed sum to be paid as liquidated damages to compensate the non-breaching party in the event of breach. *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 304, 63 L.Ed. 647 (1919); *Davy v. Crawford*, 147 F.2d 574, 575 (D.C.Cir.1945); *Lee Builders Inc. v. Wells*, 34 Del.Ch. 307, 103 A.2d 918, 919 (1954); *In Re Ross & Sons, Inc.*, 10 Del.Ch. 434, 95 A. 311, 315 (1915). But if the purpose of such a provision is not to compensate the non-breaching party and is instead to punish the breaching party or en-

to undertake the smaller projects. (*Id.* at A–25 to A–26.)

sure his performance, the provision is void as a penalty. *Davy,* 147 F.2d at 575; A. Corbin, *Corbin on Contracts,* § 1057 (1964); 22 Am.Jr.2d Damages § 213 (1965).

In order to determine if a provision is a valid liquidated damages provision or an unenforceable penalty, Delaware courts apply the following test. Where (1) the damages that would result from a breach are uncertain or incapable of accurate calculation by any accepted rule of law, and (2) the amount fixed is a reasonable forecast of such damages, the provision is one for liquidated damages and will be enforced like any other. Conversely, if the provision fails to meet one of these criteria, the damages stemming from a breach being easily ascertainable or the amount fixed excessive, the provision is void as a penalty. *Gilbane Building Co. v. Nemours Foundation,* 666 F.Supp. 649, 652 (D.Del.1985) (Stapleton, C.J.); *Lee Builders Inc.,* 34 Del.Ch. 307, 103 A.2d at 919; *In re Ross,* 10 Del.Ch. 434, 95 A. at 315.

The test suggested by the widely accepted Restatement of Contracts is no different:

§ 339. LIQUIDATED DAMAGES AND PENALTIES.

(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

Restatement of Contracts § 339 (1932).

■ Some courts have added a third criterion to this test: the parties must have intended the provision to serve as a liquidated damages provision and not a penalty. *E.g., Higgs v. United States,* 546 F.2d 373, 377 (Ct.Cl.1976); *Walter Motor Truck Co. v. South Dakota et al.,* 292 N.W.2d 321, 323 (S.D.1980); *Oldis v. Grosse-Rhodes,* 35 Colo.App. 46, 528 P.2d 944, 947 (1974). Pan and PNMC insist that this criterion

weighs heavily in their favor since WHA intended the stipulated damages provision to serve as a penalty to secure the timely completion of the project. (D.I. 53 at 9–10.)

Courts adopting this intention criterion have been criticized by numerous commentators for merely paying lip service to the intention of the parties while deciding the cases based on the first two criteria, the certainty of damages and the reasonableness of the stipulated amount. Corbin, *supra* at 5, § 1058; K.W. Clarkson, R.L. Miller, T.J. Morris, *Liquidated Damages v. Penalties: Sense or Nonsense,* 1978 Wis. L.R. 351, 353 (1978). The view expressed by these commentators has merit. The intentions of the parties only appears relevant in the cases cited above insofar as it is evidenced by the other two criteria. As Corbin states, "[i]t appears that the intention of the parties is to control [only] if they intend the right thing." Corbin, *supra* at 5, § 1058. Thus the intention criterion adds nothing to the liquidated damages versus penalty test since it will serve to validate a provision only if the other two criteria are met and to invalidate a provision only when they are not. Moreover, Delaware courts have not embraced the intention criterion, choosing instead to examine only the uncertainty of damages and reasonableness of the stipulated amount. *Lee Builders Inc.,* 34 Del.Ch. 307, 103 A.2d at 919; *In re Ross,* 10 Del.Ch. 434, 95 A. at 315. Thus this Court declines to adopt the intention criterion and will not consider Pan's and PNMC's argument concerning that criterion.

Turning to the facts of this case, the Court believes the validity of the stipulated damages provision turns primarily on the resolution of a subissue, vigorously disputed by the parties: Does the stipulated damages provision take into account the potential liability WHA faced for personal injury and property damage to its tenants ("the Liability Issue"), or does the provision simply apply to loss of rent? If the stipulated damages provision does not cover the Liability Issue, leaving rent loss as the only potential damage, it is much more likely that the stipulated damages provision

would fail both ends of the test set out above. Russ admits that rent loss is easily calculated (D.I. 45 at 89), and $1,000 a day would seem excessive to compensate WHA for rent loss alone.

Conversely, if the Liability Issue is within the scope of the stipulated damages provision, it is far more likely that the stipulated damages provision would pass both parts of the test. The Liability Issue would seem to be impossible to calculate accurately and the $1,000 a day amount reasonable in light of the tremendous potential liability WHA faced.

■ Not surprisingly, the parties are sharply divided on this point. Pan and PNMC insist that the Court should not consider the Liability Issue in determining the certainty of WHA's potential damages or reasonableness of the stipulated amount since the Liability Issue is not within the scope of the stipulated damages provision. (D.I. 53 at 18–29; 58 at 3–5.) In response, WHA insists that the Liability Issue is clearly within the scope of the stipulated damages provision and requests that the Court consider it when determining the provision's validity. (D.I. 55 at 15–16; 59 at 3.) Since there is a genuine issue of material fact with regard to this issue, the Court must agree with WHA, the party opposed to summary judgment.

Pan and PNMC offer two arguments in support of their position. First, Pan and PNMC insist that applying the stipulated damages provision to the Liability Issue would run afoul of the rule announced in the famous contracts case of *Hadley v. Baxendale* since WHA's liability damage would have arisen from circumstances not "in the contemplation of both parties at the time the contract was formed." (D.I. 53 at 18.) Pan and PNMC paraphrase *Hadley* accurately but misinterpret it in applying it to the facts of this case. *Hadley* dealt with the recoverability of *actual* damages which arose out of circumstances unknown

to the breaching party when the contract was formed. *Hadley*, 9 Exch. 341 (1854). *Hadley* had nothing to do with stipulated damages provisions and its logic is inapplicable here.

The question of whether the stipulated damages provision contained in contracts 066 and 068 applies to the Liability Issue is a matter of contract interpretation which the Court must resolve by ascertaining the intentions of the parties.[2] *Jefferson Chemical Co. v. Mobay Chemical Co.*, 267 A.2d 635, 636 (Del.Ch.1970). Russ testified that personal injury and property damage liability were the main elements she considered in setting the stipulated damages figure. (D.I. 45 at 20.) In contrast, Nicholas Poulathas, Pan's president, by way of affidavit stated he believed that the stipulated damages provision did not cover the Liability Issue. (D.I. 53B at A–152.) The Court is thus faced with a genuine dispute of fact which cannot be resolved on summary judgment.

This dispute also leaves Pan's and PNMC's second argument unresolved. Pan and PNMC contend that the parties' inclusion of an indemnification provision in contracts 066 and 068 illustrate the intention that the indemnification provision and not the stipulated damages provision cover the Liability Issue. (D.I. 58 at 4.) However, the genuine dispute as to the true intentions of the parties leaves the Court powerless to decide this argument on summary judgment as well.

Based on the above, the Court concludes that it is unable to decide whether the stipulated damages provision passes either end of the liquidated damages versus penalty test. The resolution of the test depends largely on the scope of the stipulated damages clause, an issue not ripe for summary judgment. Therefore, the Court will deny Pan's and PNMC's motion for summary judgment.

2. This examination of the intention of the parties is of course different than the intention criterion rejected by the Court earlier in this Memorandum Opinion. There the Court decided not to add the intentions of the parties as an element in the liquidated damages versus penalty test. Here the Court examines the intentions of the parties to determine the scope of the stipulated damages provision. It is strictly a matter of contract interpretation for which courts have always looked to the parties' intentions.

An order will be entered in accordance with this Memorandum Opinion.