**UNITED STATES of America, Plaintiff,**

v.

**STATE OF DELAWARE, Robert W. Chastant, Director, Division of Revenue, Defendant.**

**Civ. A. 88–440–CMW.**

United States District Court, D. Delaware.

Jan. 16, 1991.

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., and Donald J. Gavin, Sp. Litigation Counsel, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Jos. Patrick Hurley, Deputy Atty. Gen., State of Del., Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff United States of America, brought this action on August 4, 1988. The complaint challenges the constitutionality of the State of Delaware's assertion of the Delaware Public Utility Tax, imposed by 30 *Del.C.* § 5502(b), on purchases

of electricity by the Dover Air Force Base from Delmarva Power and Light Company (DP & L).[1] This challenge is based on the United States' position that the legal incidence of the Delaware Public Utility Tax falls upon the consumer-purchaser of the electricity, an agency of the United States in this case, and, therefore, violates the Supremacy Clause of the United States Constitution. The Plaintiff seeks declaratory and injunctive relief prohibiting the Defendant from imposing the subject public utility tax on future purchases of electricity by the Dover Air Force Base from DP & L. In addition, Plaintiff seeks a refund of such taxes paid to Delmarva Power and Light Company for the six year period prior to the filing of this action in August, 1988, or from August, 1982, to the date of judgment.[2]

The Defendant, the Delaware Division of Revenue, filed a motion for summary judgment on January 26, 1990. The Delaware Division of Revenue asserts that the relief requested by the United States of America should not be granted. The Delaware Division of Revenue bases this assertion on its position that the legal incidence of the Delaware Public Utility Tax, is on the distributor DP & L and not the United States. Therefore, in the Defendant's view the Delaware Public Utility Tax is constitutional and a refund of taxes sought in this case is not proper.

The Plaintiff the United States of America filed a cross motion for summary judgment on February 5, 1990. The United States of America seeks a declaration that the Delaware Public Utility Tax imposed by 30 *Del.C.* § 5502(b) is unconstitutional and may not be imposed and a refund of such taxes collected for the period from August, 1982 to date, together with interest as provided by law.

The parties have filed briefs in support of and in opposition to the pending motions,

---

1. The complaint in this case focuses on the public utility tax on electricity furnished by DP & L to the Family Housing Annex area, which is geographically separated from the Main Base area. The electricity for the Main Base is purchased from the City of Dover but these purchases are not the focus of this case.

2. The general six (6) year statute of limitations on actions by the United States for money damages is contained in 28 U.S.C., Section 2415.

and this Court has heard oral argument. These motions are presently before the Court for determination. The question to be resolved in this case is whether the Dover Air Force Base, an agency of the United States Government, which purchases electricity from DP & L, a public utility in the State of Delaware, must pay a Public Utility Tax imposed by Delaware State Law. After examining the taxing statute at issue and all of the appropriate circumstances and facts in light of the relevant caselaw, the Court concludes, for reasons which will be explained herein, that the tax at issue does not violate the Supremacy Clause. The Court finds that the legal incidence of this tax is on the distributor and not on the purchaser of the utility service. The Court, therefore, grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

### Summary Judgment Standard

Summary judgment under F.R.C.P. 56(c) is proper if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." In deciding a motion for summary judgment, a court "must view all facts, and any reasonable inference from those facts, in the light most favorable to the party opposing summary judgment." *Wilmington Housing Authority v. Pan Builders, Inc.*, 665 F.Supp. 351, 353 (D.Del.1987) (citing *Adickes v. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The inquiry is restricted to ascertaining whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmovant, no genuine issue for trial exists. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In granting Defendant's motion for summary judgment the Court has determined that the Delaware Public Utility Tax is constitutionally valid and that there is no genuine issue as to any material fact and the Delaware Division of Revenue is entitled to Judgment against the United States as a matter of law.

### Discussion

The cross motions for summary judgment in this case reflect no dispute over the facts applicable to the imposition of the Delaware Public Utility Tax on the Air Force's purchases of electricity from Delmarva Power and Light Company. The dispute arises as to whether the uncontroverted facts in this case show that the utility tax has been passed through to the consumer-purchaser, Dover Air Force Base, such that the legal incidence of the tax is on the United States.

The central question upon which the outcome of the pending motions hinge is whether the Delaware Public Utility Tax, as applied to purchases of electricity by the Dover Air Force Base, from DP & L, is unconstitutional because the legal incidence of the tax is on the United States and not the third party doing business with the United States, Delmarva Power and Light Company. The resolution of this question must necessarily start with the fundamental principle of *McCulloch v. Maryland,* 4 Wheat. (U.S.) 316, 4 L.Ed. 579 (1819), that the possessions, institutions, and activities of the federal government, in the absence of congressional consent, are not subject to any form of state taxation. This principle, however, can present difficulty in application due to the competing philosophies which impact upon it. The Supreme Court stated in *James v. Dravo Contracting Co.,* 302 U.S. 134, 150, 58 S.Ct. 208, 216, 82 L.Ed. 155 (1937), that the application of this principle requires the observation of close distinctions by the court "in order to maintain the essential freedom of government in performing its functions, without unduly limiting the taxing power which is equally essential to both Nation and State under our dual system."

Essentially the Court must balance these competing concerns in determining where

the legal incidence of a tax falls, by considering the taxing statute in light of all of the relevant circumstances. After examining the caselaw in this area, the Court finds the relevant circumstances to be weighed include (1) what party is legally liable for the payment of the tax; (2) what party bears the ultimate economic burden of the tax; (3) the legislative history of the tax and the intent of the taxing authority; (4) the rights and obligations of the parties to the transaction on which the tax is imposed; and (5) whether the economic burden of the tax, if imposed on a non-governmental agency, is required to be passed on to the United States. *United States v. City of Leavenworth, Kan.*, 443 F.Supp 274, 281–2 (D.Kan.1977). The Court will discuss each of these factors in reference to the taxing statute at issue in this case. The tax at issue in this case is the Delaware Public Utility Tax. It is imposed by 30 *Del. C.* § 5502(b) which says:

A tax is imposed upon any distributor of gas, electricity, telegraph or cable television communication commodities and services which tax shall be at a rate of 5% of the gross receipts or tariff charges received by the distributor for such commodities or services distributed within this State.[3]

Section 5501(3) defines "Distributor" to include, "any company, corporation, municipality, partnership, firm, association, cooperative or any person or group of persons which supplies the commodities or services subject to the taxes imposed by this chapter for sale to ultimate consumers or users within this State."

An examination of the appropriate portions of this taxing statute indicates that the distributor is the party that is legally liable for the payment of this tax. Section 5502(b) states that "[a] tax is imposed upon any distributor of gas, electricity, ... at the rate of 5% of the gross receipts or tariff charges received by the distributor for such commodities...." Since the tax is calculated based on the distributor's gross receipts the statute clearly contemplates a

tax that is imposed on the distributor. Section 5503(b) confirms this by stating that "[t]he tax imposed by § 5502(b) of this title shall be imposed upon the distributor and is not to be construed as a tax upon the consumer or user."

In *United States v. City of Leavenworth, Kansas*, 443 F.Supp. 274 (D.Kansas 1977), the legal liability for payment of the exaction, a franchise fee, was found to fall upon Kansas Power & Light. In that case as in the present case, the taxing statute contained no provision for collection of the exaction directly from the United States, nor did it authorize any procedures whereby penalties for nonpayment could be sought against the United States.

The Supreme Court, however, has rejected "the proposition that the legal incidence of a tax falls always upon the person legally liable for its payment." *First Agricultural Nat. Bank v. Tax Comm'n*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). *United States v. Mississippi Tax Comm'n*, 421 U.S. 599, 607, 95 S.Ct. 1872, 1877, 44 L.Ed.2d 404 (1975). Therefore, the finding that the distributor, DP & L, is the party legally liable for payment of the Delaware Public Utility Tax is not dispositive of the issue where the legal incidence of the tax falls in this case.

A further examination of this taxing statute reveals that the consumer-purchaser bears the ultimate economic burden of this tax. Section 5502(c)[4] contemplates that this tax will be taken into consideration by the Public Service Commission when considering for approval tariff adjustments filed by a regulated distributor and that "the tax shall appear on the customer's bill as a separate item." It is clear from this language that the consumer-purchaser is the one that bears the economic burden of this tax. In this case the United States as a consumer-purchaser has received bills from DP & L with this tax separately listed and has paid this tax.

Finding that the consumer-purchaser bears the ultimate economic burden of a

---

3. The rate was lowered by amendment effective in 1987 to 4.25%.

4. For what 30 *Del.C.* § 5502(c) provides see footnote 8 supra.

tax, however, is also not dispositive on the issue of where the legal incidence of the tax falls in this case. The Supreme Court stated in *Gurley v. Rhoden*, 421 U.S. 200, 204, 95 S.Ct. 1605, 1608, 44 L.Ed.2d 110 (1975), that a determination of who bears the economic burden of a tax does not decide where the legal incidence of that tax falls.

Next this Court considered the leglislative history of the Delaware Public Utility Tax and the intent of the taxing authority. In 30 *Del. C.* § 5503(b) there is a clear statement by the legislature that "[t]he tax imposed by § 5502(b) of this title shall be imposed upon the distributor and is not to be construed as a tax upon the consumer or user." This is in contrast to the tax imposed by § 5502(a) of the same title.[5] It is clear that the tax imposed by § 5502(a) as described in § 5503(a) is to be collected by the distributor from the ultimate consumer such that the tax is imposed on the consumer.[6] Again, however, even a clear statement by the legislature such as there exists in this case as to the tax imposed by § 5502(b) is alone not dispositve as to where the legal incidence of the tax falls in this case.

The Court must also examine the rights and obligations of the parties to the transaction on which the tax is imposed. As stated previously the distributor, DP & L, is legally responsible for the payment of this tax. There are no provisions in this statute for the institution of collection procedures against a purchaser for non-payment of this tax. The Delmarva Power and Light Company is not acting as a collection agent that is required to collect this tax from their customers and then remit the collected amount to the state taxing authority.[7] The obligation for the payment of the Delaware Public Utility Tax is clearly on the distributor, DP & L. Again, the tax imposed by § 5502(b) should be contrasted with the tax imposed by § 5502(a). As described in § 5503(a) the tax imposed by § 5502(a) clearly places the distributor in the role of a collection agent. This is not the case with the tax imposed by § 5502(b).

Finally, this Court must consider whether the economic burden of the Delaware Public Utility Tax, is required to be passed on to the United States. The Court in *United States v. State of Maryland*, 471 F.Supp. 1030, 1038 (D.Md.1979), explained that "[i]f this inquiry indicates that under the applicable facts and the controlling statutory provisions the electric companies are *required* to pass the tax on to their customers for payment, then the exaction is unconstitutional insofar as federal agencies are concerned. A state tax which 'must' be passed on to the federal purchaser of goods and services is invalid. On the other hand, if the inquiry discloses that there is no such mandatory requirement, then the incidence of the tax does not fall upon the federal government and the exaction is a valid one."

---

**5.** Section 5502(a) provides:

(a) A tax is imposed upon all intrastate telephone commodities and services distributed within this State by the distributor at the rate of 5% of the sale price or tariff charge paid for such commodities or services.

**6.** Section 5503(a) provides:

(a) The tax imposed by § 5502(a) of this title shall be collected by the distributor from the ultimate consumer as a separate item not included in the sales price or tariff charge. The amount of tax collectible from the ultimate consumer shall in each case be calculated on the basis of a uniform percentage of the sale price or tariff charge payable by the ultimate consumer for the commodity or service which is subject to tax under this section and shall in each case be computed to the nearest highest cent; provided, however, that such tax shall not apply to receipts derived through the use of automatic coin collecting machines or coin boxes. A distributor's gross receipts shall not be deemed to include any portion of the tax collected from its consumer.

**7.** In a September 7, 1990 decision by the Comptroller General of the United States, File Number B–238410, regarding a 9–1–1 emergency service tax imposed by the State of Arizona in differentiating the Arizona type statute, the Texas 9–1–1 tax statute was noted as a clear example of where the legal incidence of the tax fell on the customer. The Texas statute, in contrast to the Delaware tax statute, provided that "[e]very billed service user is liable for any fee imposed." This tax was characterized as a "vendee" tax as opposed to a "vendor" tax because the telephone company under this tax was simply acting as a collection agent.

In considering the facts of this case and the provisions of the taxing statute in conjunction with the above guiding principles, this Court finds that the taxing statute does not require that the Delaware Public Utility Tax be passed along to the consumer. The United States argues that the applicable facts of this case and the controlling provisions of the Delaware Tax Statute demonstrate that this tax has been passed through to the United States. Plaintiff, the United States, bases its argument on Section 5502(c) which requires DP & L to list the tax as separate item on a customer's electric bill and which contains the "passed through" language upon which the United States hinges its argument.[8]

The Court can not agree with the United States' interpretation of the language in Section 5502(c) of this tax statute. As stated previously this Court finds that this tax is imposed on the distributor. Furthermore, the Court views Section 5502(c) as a provision designed to acknowledge that the industry involved in this case is a highly regulated one and as such the Public Service Commission is directed to consider this tax as a factor in the rate setting process to prevent harm to a distributor who is required to pay this tax. Section 5502(c) of the Statute does nothing more than recognize the economic reality of doing business by authorizing that the costs of doing such business be passed on to the consumer. The Court does not interpret the language of this Statute as a mandatory requirement that the tax be passed on to the ultimate consumer by a distributor.

In the *State of Maryland* case, 471 F.Supp at 1039, the Court gave the word "authorize" that was used in the Maryland statute, a permissive connotation rather than a mandatory one, in determining whether the statute required the environmental surcharge be passed on to the customer. This interpretation led the Court to find that the electric companies were not required to pass the environmental surcharge on to their customers. The language used in Section 5502(c) of the Delaware statute, "directed, after consultation" is arguably even more permissive then the language in the Maryland statute. The Court finds that the Legislature intended to give the words of the Delaware statute a permissive meaning for the reasons stated in the proceeding paragraph.

The Court's characterization of the language in Section 5502(c) as permissive becomes even more obvious when compared to the language used in the Massachusetts sales tax statute in *Agricultural Bank v. Tax Comm'n*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). The Massachusetts' statute used the language "shall collect" in reference to the vendor's duty to collect from a purchaser the tax imposed. The Supreme Court read this language "as a clear requirement that the sales tax be passed onto the purchasers." *Id.* at 347, 88 S.Ct. at 2178.

Since the taxing statute in this case does not require that the tax be passed on to the United States, the legal incidence of the Delaware Public Utility Tax does not fall upon the United States. However, a finding that the legal incidence of this tax falls upon Delmarva Power & Light Company, a third party providing electricity to the United States, does not end the Court's analysis. In order to be sustained this tax can not be discriminatory or unduly interfere with the sovereignty of the United

---

**8.** Section 5502(c) provides:

(c) When the tax imposed by subsection (b) of this section applies to a distributor subject to the regulation of the Public Service Commission, the Commission is directed, after consultation with such distributor and without a public hearing, to adjust the tariff of such distributor so that the tax is passed through pro rata to the distributor's customers and the distributor's earnings are neither increased nor decreased by such a tax. The tariff adjustments filed by such distributor and approved by the Public Service Commission shall not incorporate the tax in the charges for commodities and services, and the tax shall appear on the customer's bill as a separate item. The Public Service Commission is further directed to allow such adjusted tariffs and the rates therein to become effective immediately upon filing without any requirement of 30 days' notice and without suspension thereof. The Public Service Commission may enter any orders which shall be necessary to permit the tax to be passed through to such distributor's customer while revised tariffs and billing procedures are being prepared.

States. *City of Leavenworth, Kan.*, 443 F.Supp. 274, 283 (1977). The Supreme Court has stated that it is not necessary to cripple the power to tax "by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government." *James v. Dravo Contracting Co.*, 302 U.S. at 150, 58 S.Ct. at 217.

There is no indication in the facts of this case that the Delaware Public Utility Tax discriminates against the United States or any of its agencies or instrumentalities. Like the tax scheme in the *City of Leavenworth, Kan.*, case which was found to be non-discriminatory, the Delaware statute assesses each customer's share of the tax on a pro-rata basis.

There is also no indication in this case that this non-discriminatory tax burdens the functioning of the federal government to such a degree as to require this Court to institute a tax immunity. The Supreme Court has described the degree of interference necessary for the implication of this constitutional tax immunity of federal agencies to state taxation in *James v. Dravo Contracting Co.*, 302 U.S. at 154–55, 58 S.Ct. at 218–19, as a tax that "does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power." In this case the only burden that the United States will experience is an increased cost in operating the Family Housing Annex at the Dover Air Force Base. As to the significance of this burden, the Supreme Court stated in *City of Detroit v. Murray Corp.*, 355 U.S. 489, 494, 78 S.Ct. 458, 461, 2 L.Ed.2d 441 (1957), that "the imposition of an increased financial burden on the Government does not by itself invalidate a state tax."

After an analysis of all of the relevant circumstances and facts of this case in reference to the taxing statute at issue, this Court concludes that the legal incidence of the Delaware Public Utility Tax is on the distributor, DP & L. This Court also concludes that the tax is non-discriminatory and that the burden of increased costs that the United States will experience does not justify the imposition of a tax immunity. Therefore, the Delaware Public Utility Tax imposed by 30 *Del.C.* 5502(b) as applied to purchases of electricity by the Dover Air Force Base from Delmarva Power and Light Company is valid and constitutional. Defendant's motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.

