# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

LYONS INSURANCE AGENCY, INC.,   )
                                   )
          Plaintiff,        )
                                   )
     v.                      )  C.A. No. 2017-0348-SG
                                   )
KELLY WARK and RIGGS,      )
COUNSELMAN, MICHAELS &   )
DOWNES, INC.,            )
                                   )
          Defendants.    )

## MEMORANDUM OPINION

Date Submitted:  October 16, 2019
Date Decided:  January 28, 2020

James S. Green, Sr. and Jared T. Green, of SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware, *Attorneys for Plaintiff.*

John A. Sensing and Jesse L. Noa, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, *Attorneys for Defendants.*

GLASSCOCK, Vice Chancellor

The Plaintiff here seeks enforcement of an employment contract and its liquidated damages clause. The matter is before me on cross motions for Summary Judgement. Delaware law in general recognizes that the value of contracts is maximized by enforcing them as written; little value can come of a promise that can be avoided upon the remorse of the maker thereof. This contractarian view has its limits when such enforcement is inimical to public policy, however. In certain limited circumstances, our courts will decline to enforce contractual obligations, no matter how clear or sincerely intended when entered.[1]

One such limited exception to enforceability of promises supported by consideration sometimes obtains in connection with liquidated damages for breach of covenants not to compete in employment contracts. Many courts have noted the potential negative policy implications of such covenants not to compete—some jurisdictions, California included, find it fundamental that the right to pursue a livelihood trumps the utility of contracts; as a result covenants not to compete in employment contracts are, generally, considered void in those jurisdictions.[2] Delaware, to the contrary, is of the view that value may inhere in such agreements

---

[1] Breach of a promise to help burgle a liquor store, for instance, may be bad form; nonetheless, this Court will not order specific performance.

[2] *See*, *e.g. Nuvasive, Inc. v. Miles*, 2019 WL 4010814, at *3 (Del. Ch. Aug. 26, 2019) (noting that "the fundamental policy of California regarding non-solicitation covenants . . . prohibits covenants not to compete"); Cal. Bus. & Prof. Code § 16600 (West) ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.").

and will enforce covenants not to compete to the extent they are reasonably tied to the interests of the employer and are supported by consideration.[3] Likewise, liquidated damages in contracts are problematic where they operate as a penalty or forfeiture; where they serve as a reasonable estimation of damages that would be difficult otherwise to quantify, however, our courts enforce such clauses.[4] Liquidated damages clauses in contractual non-competes are particularly suspect as potentially-unreasonable restraints on competition, and on ex-employees' interests in earning a living.[5] This Court may enforce such clauses, but only where they reasonably relate to an actual anticipated loss caused by the employee's anti-contractual competition. In fact, at least one Delaware court has pointed out that a liquidated damages provision that is simply a contractual penalty untethered to losses caused by ex-employee competition serves effectively as an *in terrorem* clause, and is an unreasonable and unenforceable limitation on the ex-employee's pursuit of a livelihood.[6]

---

[3] Under Delaware law, a plaintiff seeking specific enforcement of a covenant not to compete must show that the covenant: (1) is reasonable in geographic scope and temporal duration, (2) advances a legitimate economic interest of the party seeking its enforcement, and (3) survives a balancing of the equities. *E.g. Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2008 WL 902406 at *4 (Del. Ch. Apr. 3, 2008).

[4] *E.g. Tropical Nursing, Inc. v. Arbors at New Castle Subacute and Rehabilitation Center*, 2005 WL 8135148, at *4 (Del. Super. Ct. Apr. 4, 2005).

[5] *E.g. Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *11 (Del. Ch. Oct. 23, 2002).

[6] *Faw, Casson & Co., L.L.P. v. Halpen*, 2001 WL 985104, at *3 (Del. Super. Ct. Aug. 7, 2001).

The contract at issue offers a variation on this theme. Here, the Plaintiff, Lyons Insurance Agency, Inc. ("Lyons"), employed Defendant Kelly Wark as an insurance agent.[7] The terms of the employment agreement provide that if, after working for Lyons, the Defendant goes to work for a competitor, and if a Lyons customer that the Defendant had serviced takes its business to the competitor within the non-compete period, liquidated damages flow from the Defendant to Lyons. This provision is untethered to any competitive acts by the former employee. Here, the Defendant went to work for a competitor; later, a Lyons customer, without the encouragement or participation of the Defendant, fired Lyons as its insurance agency; and then—after an open bidding process—the customer ultimately became a client of the competitor. Although the employment agreement contains a recitation that any employment by a competitor "would cause Lyons harm," the Plaintiff does not seek to enjoin employment. Instead, the Plaintiff seeks liquidated damages.

Consistent with the common law of Delaware, such facts lead to the following conclusion: the non-compete provision of the parties' contract of employment is presumptively valid, but the liquidated damages provision is unenforceable under these facts, as a matter of public policy. My reasoning is set out in more detail after a factual recitation, below.

---

[7] For simplicity, when I refer to the "Defendant," I am referring to Ms. Wark. Although Riggs, Counselman, Michaels & Downes, Inc. ("RCM&D") is also a named Defendant in this case, the Plaintiff's allegations in its motion here focus on Wark.

## I. BACKGROUND[8]

Plaintiff Lyons is a Delaware corporation headquartered in Wilmington, Delaware.[9] Defendant Riggs, Counselman, Michaels & Downes, Inc. ("RCM&D") is engaged in the insurance business in Delaware.[10] Lyons and RCM&D are competitors in the insurance market.[11] Defendant Kelly Wark is a "designated certified self-funding specialist" and has worked in the insurance industry since 1999.[12] Wark was employed at Lyons and subsequently at RCM&D.[13] Her employment with these insurance businesses served as the impetus for this litigation.

On February 19, 2014, Wark began employment at Lyons as an account executive.[14] As a part of her employment, Wark signed a Confidentiality and Non-Solicitation Agreement (the "Agreement").[15] Under § 4.1 of the Agreement, Wark contracted to certain consequences if, within two years of leaving Lyons' employ, she worked for a competitor *and* any of her Lyons business also moved to that

---

[8] At my request, the parties submitted a Stipulation of Uncontested Facts, Docket Item ("D.I.") 40 ("Stip."). I draw these facts from the stipulation and documents incorporated by the parties therein.

[9] Stip., ¶ 1; Pl.'s Opening Br. In Support of Its Mot. for Summ. J., D.I. 30 ("Pl. Opening Br."), at 2 ("Lyons is a Delaware corporation. . .").

[10] Stip., ¶ 2.

[11] *Id.* ¶ 3.

[12] *Id.* ¶¶ 4–5.

[13] *Id.* ¶¶ 6, 14–15.

[14] *Id.* ¶ 6.

[15] *Id.* ¶ 7.

competitor.[16]  This provision, called the "Purchase of Book" clause, did not require that Wark *cause* the business to follow her or otherwise engage in competitive behavior in order to face contractual consequences:

> During the term of Employee's employment with the Company and for a period of twenty-four (24) months after the date of the termination of such employment for any reason, should Employee accept employment with another broker or become self-employed, or enter into a referral arrangement with another broker, and some or all of Employee's Book of Business moves to Employee's New employer, new business or referring relationship, Employee shall pay to Lyons an amount equal to 1.5 times the Moved Business. . .[17]

The Agreement defines the "Book of Business" as "the customer relationships . . . which Employee develops during the term of his employment with Lyons. . ."[18] "Moved Business" means "the annualized amount of commissions generated by the portion of the Book of Business . . . moved to Employee's new employer, new business or referring relationship at the time such portion of the Book of Business is moved . . . ."[19]

At the time Wark began her employment with Lyons, one of Lyons' existing customers was New Process Fibre Company ("New Process").[20]  Wark testified that

---

[16] *See id.* ¶ 8; Pl. Opening Br., Ex. B, Lyons Insurance Agency, Inc. Confidentiality and Non-Solicitation Agreement ("Agreement"), § 4.1.

[17] Agreement, § 4.1.

[18] *Id.*

[19] *Id.* § 3.1.2.

[20] Stip., ¶ 10.

Lyons "pretty much handed" her a book of business upon commencing her employment, and New Process was a part of that business.[21] Wark served as the primary contact for New Process for its insurance needs.[22] Wark's contact at New Process was Debra Rouse.[23]

In July 2016, Wark left Lyons, and six months later, in January 2017, she began employment at RCM&D.[24] Shortly after Wark started at RCM&D, Rouse became unhappy with the customer service at Lyons and decided to put New Process' insurance plans out for bid.[25] Rouse had already determined at the time she put the plans out for bid that Lyons would not be retained as the New Process insurance broker.[26] Near the end of January 2017, Rouse contacted Wark at her new employer, RCM&D, to tell her that the New Process business would be put out for bid, and Rouse asked if Wark could participate in the bidding.[27] Wark, who had not solicited any business from Rouse or contacted her since leaving Lyons, said that she could not participate due to her "noncompete" with Lyons.[28] Rouse told Wark

---

[21] *Id.* ¶ 11.

[22] *Id.* ¶ 13.

[23] *Id.* ¶ 12.

[24] *Id.* ¶¶ 14–15.

[25] *Id.* ¶ 16.

[26] *Id.* ¶ 17.

[27] *Id.* ¶ 18.  Rouse located Wark via LinkedIn.  *Id.*

[28] *Id.* ¶¶ 20–21.

that New Process was going to fire Lyons in any event, and asked if this fact changed her obligations under the non-compete.[29] Wark said she would talk about this issue with senior leadership at RCM&D.[30]

After discussions with RCM&D management, Wark told Rouse that RCM&D would participate in the bid process, but it would not do so through Wark.[31] The bid process went forward, and RCM&D and Lyons both participated in a pool of six total bidders.[32] New Process eliminated half of the bidders—including Lyons—after an initial round of bids.[33] Wark absented herself from the bid process until she confirmed that New Process had both eliminated Lyons and informed Lyons that it would not retain New Process' business.[34] After Lyons' elimination, Wark participated in a meeting on behalf of RCM&D with Rouse and the President of New Process.[35] Two weeks later, New Process awarded its business to RCM&D.[36] Following the successful bid, Wark served in a role for New Process at RCM&D similar to the one she had occupied at Lyons, with Rouse as her primary contact.[37]

---

[29] *Id.* ¶ 22.

[30] *Id.* ¶ 23.

[31] *Id.* ¶ 24.

[32] *Id.* ¶ 25.

[33] *Id.* ¶ 26.

[34] *Id.* ¶¶ 27, 29.

[35] *Id.* ¶ 28.

[36] *Id.* ¶ 30.

[37] *Id.* ¶ 36.

Not long after New Process moved its business to RCM&D, Lyons sued.[38] It alleges violations of the Agreement with respect to several customers but only seeks recovery related to New Process.[39] After the litigation began, Wark asked Rouse to prepare a letter memorializing the details of the bid process, and Rouse did so on May 25, 2017.[40] The parties agree that there is no evidence currently in the record suggesting that either Wark or RCM&D used Lyons' proprietary information in bidding on the New Process business.[41] Shortly after filing the lawsuit, the parties stipulated to a standstill order mooting the Plaintiff's initial request for injunctive relief.[42] The parties vacated that standstill order in February 2019.[43] The parties then filed cross-motions for summary judgment concerning the claim for breach of contract in the Plaintiff's Amended Complaint.[44] I heard argument on October 1, 2019, and I asked for a stipulation of facts from the parties. After the parties submitted their Stipulation of Uncontested Facts on October 16, 2019, I considered the matter fully submitted for decision. My reasoning follows.

---

[38] *Id.* ¶ 31.

[39] *Id.* ¶ 32.

[40] *Id.* ¶¶ 33–34. Wark did not participate in the preparation of Rouse's letter. *Id.* ¶ 35.

[41] *Id.* ¶ 37.

[42] Stipulation and Standstill Order, D.I. 8.

[43] Order to Vacate Standstill, D.I. 29.

[44] Pl.'s Mot. for Summ. J., D.I. 30; Def.'s Cross-Mot. for Summ. J., D.I. 32.

## II. ANALYSIS

### 1. <u>Legal Standards and Issues Presented</u>

Summary judgment may be granted if there is "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law."[45] Where the parties file cross-motions for summary judgment and "have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[46] Such is the case here, where the parties have submitted a Stipulation of Uncontested Facts and any disputed facts are immaterial to resolution of the issues presented.[47]

The elements of a breach of contract claim are well-known. Lyons must show that it had a valid contract, that Wark breached an obligation imposed by that contract, and that damages resulted from the breach.[48] The Amended Complaint alleged various breaches of the non-compete/solicitation provision of the Agreement, involving several clients.[49] On its Motion for Summary Judgment,

---

[45] Ct. Ch. R. 56(c).

[46] Ct. Ch. R. 56(h).

[47] While the Plaintiff suggests a factual dispute over whether Wark engaged in competitive behavior as defined in the Agreement, it is not pertinent to the question of the enforceability of the liquidated damages clause in § 4.1, under which the Plaintiff seeks relief.

[48] *E.g. Lyons Ins. Agency, Inc. v. Wilson*, 2018 WL 4677606, at *6 (Del. Ch. Sept. 28, 2018) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[49] *See* Am. Compl., D.I. 23.

9

however, the Plaintiff only seeks to vindicate its rights with respect to loss of the New Process account.[50]

"Delaware is a pro-contractarian state."[51] Therefore, as a general principle, unambiguous contracts are enforced as written.[52] There are, however, public policy exceptions to this general rule. One of these exceptions is a policy against oppression in employment contracts.[53] "The law generally frowns on agreements that restrict competition," and thus "noncompetition agreements are construed narrowly."[54] Because of this policy, Delaware imposes certain limits on enforcement of employment non-compete agreements.[55] Also to avoid oppression,

---

[50] Stip., ¶ 32.

[51] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 2012 WL 3201139, at *26 (Del. Ch. Aug. 7, 2012) (citing *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1029–30 (Del. Ch. 2006)).

[52] *Motors Liquidation Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *7 (Del. Super. Ct. June 8, 2017), *aff'd sub nom. Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.*, 191 A.3d 1109 (Del. 2018) (quoting *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005) (emphasis omitted))).

[53] *See Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *11 (Del. Ch. Oct. 23, 2002) ("Because the specific enforcement of [non-competition] covenants involves important interests of commercial enterprises and of individuals seeking to support themselves and their families financially, and because, in that setting, the court is asked to exercise its distinctively equitable powers, each such case requires a careful evaluation of the specific facts and circumstances presented" (quoting *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del. Ch. 1987))).

[54] *Faw, Casson & Co., L.L.P. v. Halpen*, 2001 WL 985104, at *3 n.7 (Del. Super. Ct. Aug. 7, 2001) (internal citation omitted).

[55] *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2008 WL 902406, at *4 (Del. Ch. Apr. 3, 2008) (applying specific performance standard, and holding that "[a] covenant not to compete, as a restraint on competition, is subject to the additional requirements that it: (1) be reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities in order to be enforceable.").

Delaware imposes limits on liquidated damages clauses in non-compete agreements and will not enforce them if they function as coercive penalties.[56]

Having stated generally the background legal principles, I find it helpful to emphasize what these cross-motions do *not* involve. Not at issue here is whether the non-competition or solicitation provisions of the Agreement are valid; I presume, for purposes of the cross-motions, that they are. Also not at issue is whether, if the record established that Wark was in ongoing breach of those provisions, injunctive relief would be available. The only question presented is whether Lyons is entitled to liquidated damages on the facts presented.

### 2. How the Liquidated Damages Clause in the Agreement Operates

The pertinent breach, according to the Plaintiff, is not breach of prohibitions against the Defendant's post-employment competition or solicitation. Instead, the alleged breach for which the Plaintiff seeks to recover is Wark's failure to pay Lyons under the liquidated damages provision, an obligation that, per the Plaintiff, arose when New Process became a client of RCM&D.[57] The remedy the Plaintiff seeks

---

[56] *Delaware Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006) ("if a provision is considered a penalty, it is void as against public policy and recovery is limited to actual damages; if the provision is a true liquidated damages provision, it will be enforced according to its terms." (quoting *S.H. Deliveries, Inc. TriState Courier & Carriage, Inc.*, 1997 WL 817883, at *2 (Del. Super. Ct. May 21, 1997))).

[57] Pl. Opening Br., at 10 ("By working for [RCM&D], servicing New Process, an existing customer, and failing to pay the purchase price for her Book of Business when New Process transferred its business from Lyons to [RCM&D], Wark breached the Employment Agreement . . . Wark breached an obligation imposed by the Employment Agreement by not paying the purchase price for the New Process Book of Business.").

11

for this failure to pay is an award of damages in the same amount. In other words, if the liquidated damages clause is not enforceable here, there are no actual damages, and the Plaintiff's breach of contract action fails as a matter of law. Although the parties raised arguments in briefing the cross-motions regarding whether Wark in fact breached her contractual non-compete, the motions themselves, I find, hinge on the validity of § 4.1 of the Agreement, the liquidated damages provision Lyons is attempting to enforce.[58] Because I find this provision of the Agreement unenforceable as applied, I do not reach the other elements of the breach of contract claim.

To analyze the contract's validity, I treat § 4.1 as a liquidated damages clause, and the Agreement as a non-compete agreement, which is how the Plaintiff views them.[59] The Agreement presents a distinctive structure for a non-compete: it contemplates an obligation to pay damages even when no prohibited competitive behavior has occurred. The Agreement defines "Competitive Behavior" in § 3.1.1, in part, as "engaging in an activity that would be a violation of Section 4.3." Section 4.3, in turn, prohibits Wark from soliciting others away from Lyons or "impair[ing] or attempt[ing] to impair any relationship, whether contractual or otherwise, between

---

[58] Lyons argues that, in helping close the deal for New Process's business, or by servicing the account, Wark breached the Agreement. *See id.* As explored further below, because New Process had at that point fired Lyons, however, no damages are alleged to have resulted from Wark's breach, if any.

[59] *See id.* at 7.

12

the Company . . . and any other person or entity. . ."[60]  Thus, this language of the Agreement effectively operates as a restrictive employment covenant and prohibits Wark from engaging in competitive behavior after leaving Lyons.[61]

Section 4.1, however—which, again, the parties treat as a liquidated damages clause—is not contingent upon Wark engaging in "Competitive Behavior" or violating § 4.3 by soliciting Lyons customers or employees, or impairing Lyons' relationships.  Instead, as written, if Wark joins a competitor, and any part of her Book of Business "moves to [her] new employer," then Wark is liable under the Agreement.  Wark's obligations under § 4.1 would be the same whether Wark hoodwinked Lyons and absconded with her Book of Business to RCM&D, or whether—as here—Wark went to work for RCM&D and a prior client came to her new business of its own accord, unprompted by her, after a competitive bid process. Indeed, as the Plaintiff conceded at argument, § 4.1 would apply in the same manner

---

[60] Agreement, §§ 3.1.1, 4.3.

[61] The Agreement also defines Competitive Behavior as "engaging in activity . . . that is competitive with any business conducted by Lyons" (§ 3.1.1), contains a recitation that post employment work for a competitor will cause Lyons harm (§ 1) and arguably waives defenses to injunctive relief in certain circumstances (§ 4.2).  Notably, Lyons does *not* contend that Wark breached an obligation to refrain from working for a competitor, nor does it seek equitable relief in its Motion for Summary Judgment.  Instead, it seeks only liquidated damages.  I specifically make no determination as to whether the Agreement prohibits Wark from working for a competitor, or whether injunctive relief would be available if requested here.

if Wark had joined RCM&D as a night janitor and had no knowledge that New Process had moved its business at all.[62]

Consistent with that contractual reading, the Plaintiff argues that, as a matter of contract, it is irrelevant whether Wark improperly solicited or competed with Lyons after she left its employ.[63] The breach occurred, the Plaintiff argues, when New Process moved its business to RCM&D and Wark failed to pay Lyons "an amount equal to 1.5 times the Moved Business" as required by § 4.1 of the Agreement.[64] The Defendants do not contest this plain reading of the contract; instead, they argue that imposition of such liquidated damages amounts to an unenforceable penalty.

The fact that the Agreement at issue here contemplates a breach merely for failure to pay for Moved Business distinguishes it from the contract at issue in *Lyons*

---

[62] Oral Argument Tr., D.I. 41, at 13:13–14:9 ("Q: So if she had gone to work for RCM&D after changing her name as a night janitor and Rouse had no idea she was there and still went to the competitor . . . within two years of the termination of her employment, under your reading of this contract, she would be liable; correct? A: Yes, Your Honor . . . I believe literally and, as a matter of fact, that's a breach of this provision.").

[63] *See* Pl.'s Reply Br. in Support of Its Mot. for Summ. J. and in Opp'n to Def.'s Cross-Mot. for Summ J., D.I. 34 ("Pl. Reply Br."), at 1 ("Ms. Wark's Employment Agreement is breached if some or all of her book of business moves to her new employer. [§ 4.1] does not depend upon Ms. Wark's active participation in the transfer of business from Lyons, but simply the actual transfer.").

[64] Pl. Opening Br., at 10 ("By working for RCMD, servicing New Process, an existing customer, and failing to pay the purchase price for her Book of Business when New Process transferred its business from Lyons to RCMD, Wark breached the Employment Agreement . . . Wark breached an obligation imposed by the Employment Agreement by not paying the purchase price for the New Process Book of Business.").

*Ins. Agency, Inc. v. Wilson*,[65] an unrelated case that nonetheless features the same plaintiff and many similar contractual aspects. Lyons argues that because I found the contract at issue in *Wilson* enforceable, I must find this contract—which according to the Plaintiff is "substantially similar, if not identical"—also enforceable.[66] The contracts, however, differ in a fundamental way. In *Wilson*, the liquidated damages clause in § 4.1 provided that "should Employee accept employment with another broker . . . and *as a result*, some or all of Employee's Book of Business moves to Employee's new employer," then the employee is liable.[67] Thus, damages in *Wilson* required a causal relationship between the loss of business and the employee's actions. That is why, in that case, "the breach [was] Wilson's anti-contractual competition through soliciting and servicing 'prospective' Lyons clients from the Book of Business."[68] By contrast, the phrase "as a result" is absent from the Agreement here. The breach here, according to the Plaintiff, is unconnected with any activity on Wark's part, whether "anti-contractual competition" or otherwise. The non-compete in *Wilson* is therefore markedly different from the Agreement before me in this case.

---

[65] 2018 WL 4677606 (Del. Ch. Sept. 28, 2018).

[66] Pl. Opening Br., at 9.

[67] *Wilson*, 2018 WL 4677606, at *9 (emphasis added).

[68] *Id.*

15

### 3. The Liquidated Damages Clause is Unenforceable

I find the liquidated damages clause of § 4.1 of the Agreement unenforceable as applied because it does not adequately connect Lyons' business loss to Wark's conduct. "Many noncompetition agreements contain liquidated damages provisions. As a general rule, a liquidated damages provision must represent a reasonable estimate of the monetary loss likely to be suffered, yet relate to an injury incapable of accurate estimation" to be valid.[69] The estimate of loss must be reasonable as of the time of contracting. In those cases "[w]here the damages are uncertain and the amount agreed upon is reasonable, such an agreement will not be disturbed."[70] Here, Lyons points out, correctly in my view, that precise damages for competitive behavior may be difficult to calculate. Moreover, § 4.1 may represent a reasonable estimate—1.5 times annualized commissions—of the detriment Lyons may incur on the loss of a client. Nonetheless, here the liquidated damages are untethered to Lyons' interest in preventing loss due to ex-employee competition, and the liquidated damages provision is unenforceable, as described below.

---

[69] *Faw, Casson & Co., L.L.P. v. Halpen*, 2001 WL 985104, at *2 n.1 (Del. Super. Ct. Aug. 7, 2001).

[70] *Lee Builders, Inc. v. Wells*, 103 A.2d 918, 919 (1954) (citing *In re Ross & Son*, 95 A. 311, 315 (Del. Ch. 1915)).

Our Superior Court dealt with a similar restrictive covenant in *Faw, Casson & Co., L.L.P. v. Halpen*.[71] In that case, an accountant signed an employment agreement that contained the following clause:

> Employee agrees as follows: (a) To pay an amount or amounts equal to one hundred percent (100%) of the gross fees billed by the company to a particular client over the twelve month period immediately preceding such termination, which was a client of the Company within such period, and which client is served (with the type of services set forth above) by Employee, or any corporation, partnership, firm or other business entity with which Employee is associated as set forth above within three (3) years from such termination of employment.[72]

Similar to § 4.1 here, the clause in *Faw, Casson & Co.* required payment if any previous clients came to the defendant's new employer. Also like the Agreement here, the clause did not require that the defendant solicit or otherwise bring about the client's move; a mere transfer of business, by itself, supported damages. Judge Stokes concluded that "[s]hould the clause be applied indiscriminately, then it would have an unlawful *in terrorem* purpose and effect."[73] The Court continued in a footnote that this "analysis appears in equity cases that consider injunctive relief. Without considering other interests *and connecting defendant's conduct in some*

---

[71] 2001 WL 985104 (Del. Super. Ct. Aug. 7, 2001).

[72] *Id.* at *2. The Court found this provision to be "a restrictive employment covenant and liquidated damages clause." *Id.*

[73] *Id.* at *3.

17

*fashion with a resulting business loss*, this liquidated damages claim would be improper."[74]

The Court in *Faw, Casson & Co.* declined to enforce the liquidated damages clause where "[d]efendant played no role in the bid award" and the plaintiff was "subject to loss of business through open bidding."[75]  In these circumstances, the Court found the liquidated damages clause unenforceable because "[t]he restraint in these aspects is not reasonable."[76]

I adopt Judge Stokes' sound reasoning here.  Section 4.1 is unreasonable to the extent it purports to impose fixed damages untethered from any act or behavior by Wark beyond that of choosing to work for a competitor—an act for which, I note, the Plaintiff in this Motion does not seek relief.[77]  Section 4.1 requires Wark to pay for Lyons' lost business, whether she participated in the loss of that business or not. If applied under the facts here, the damages provision would operate as a penalty untethered to Lyons' reasonable interests in preventing competition by ex-employees, because the harm to Lyons of the loss of the New Process account is unrelated to any action taken by Wark.[78]  Effectively, the liquidated damages

---

[74] *Id.* at *3 n.7 (emphasis added).

[75] *Id.* at *2.

[76] *Id.*

[77] *See* note 61, *supra.*

[78] *See Faw, Casson & Co.*, 2001 WL 985104, at *2–3.

18

provision would transform Wark's employment decisions into a kind of playing of the lottery: she can decide to work for a competitor, but if any of her business from Lyons happens to transfer to that competitor, even if Wark did not bring the business over—even if she actively tries to stop it—she will be forced to pay a penalty to Lyons. This is not a mere hypothetical threat—here, New Process fired Lyons for perceived poor service, then arrived at RCM&D as the result of an open bidding process. As the Court in *Faw, Casson & Co.* observed given the facts there, the plaintiff was "subject to loss of business through open bidding . . . [and] other . . . firms were disappointed as well."[79] An employer's attempt to insure against such an open-market loss through a restrictive covenant is an unreasonable restraint.

Under the Plaintiff's view, having moved to RCM&D, Wark could erect as strong a firewall as the mind of man could devise between herself and her prior clients; liquidated damages could result nonetheless. In other words, at the time of contracting, the Agreement foreseeably imposed a contingent penalty, under the facts that have come to pass, that would impose an obligation to pay fixed "damages" when the employer has incurred no actual damages from the employee's actions. Such a penalty is not enforceable as liquidated damages in this context.[80]

---

[79] *Id.* at *2.

[80] The parties argue over whether the liquidated damages provision is void *ab initio*, or enforceable where actual competitive harm has resulted from the employee's actions. The court in *Faw, Casson & Co.* endorsed such situational enforceability of the liquidated damages provision there. *Compare id.* at *2–3 *with Delaware Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del.

\*\*\*

In sum, I find that as applied, § 4.1 would work a penalty unrelated to any contractual breach by Wark. Lyons effectively concedes as much: it argues that the breach of contract occurred regardless of any breach of Wark's non-compete.[81] In the Plaintiff's view, breach occurred when New Process became a client of RCM&D and Wark *failed to pay liquidated damages*—on this reading, failure to pay damages is a breach resulting in imposition of those damages.[82] Looked at in this way, it is clear that the liquidated damages clause cannot have represented a good faith estimate of damages, otherwise difficult of proof, at the time of contracting. Instead,

---

2006) (stating that liquidated damages provisions operating as penalties are void). I need not reach the issue, given that no actual damages can have resulted from Wark's actions here. The parties' Stipulation of Uncontested Facts is particularly helpful in that determination. As recited in the background section of this Memorandum Opinion, Wark *did not* solicit New Process. She did not remain in contact with Rouse after leaving Lyons. Instead, Rouse approached Wark about bidding for the New Process business, and Wark stated she *could not participate* due to the Agreement. Even after Wark learned that New Process was determined to leave Lyons due to customer service dissatisfaction, she still absented herself from participation in the initial round of bids. Only after she learned that Lyons had been eliminated and would not be retained as an insurance broker, regardless of her participation, did she attend a meeting with Rouse, after which RCM&D won the contract.

[81] *See* Pl. Reply Br., at 1 ("Ms. Wark's Employment Agreement is breached if some or all of her book of business moves to her new employer. [§ 4.1] does not depend upon Ms. Wark's active participation in the transfer of business from Lyons, but simply the actual transfer.").

[82] Pl. Opening Br., at 10 ("[The parties] agreed that to compensate Lyons if a part of Lyons' Book of Business moved to Wark's new competitor employer, Wark was to pay Lyons 1.5 times the moved business . . . [t]hat was not done, in breach of the Employment Agreement."). The Plaintiff confirms that the fact that "money [i.e. damages due under § 4.1] has not been paid . . . is the basis of Lyon[s'] breach of contract claim."). *Id.* at 5.

20

it functions as a conditional penalty for accepting work for a competitor. Such a penalty in the context of an anti-competition clause is not enforceable.

It is the understanding of Delaware courts that companies and employees may find it beneficial to enter covenants not to compete, and where reasonable, our courts enforce such covenants, through damages or injunctive relief. If damages are the remedy, a liquidated damages clause may be warranted and enforced where proof of actual damages is uncertain and the liquidated amount represents a good faith estimate of potential actual damages. Here, however, an employer seeks damages from a former employee to cover business losses unconnected with the employee's actions, and I therefore find that the liquidated damages clause is unenforceable.

### III. CONCLUSION

The Plaintiff's Motion for Summary Judgment is denied, and Wark's Motion for Summary Judgment is granted. Because the claim against RCM&D is derivative of actionable behavior on behalf of Wark, I assume RCM&D is entitled to judgment as well; if the parties disagree, they should so indicate. The parties should submit an appropriate form of order.

21